PERKINS and others, Respondents, vs. YOUNG and wife, Appellants.

*January 6—February 2, 1954.*

For the appellants there were briefs by *Chatterton & Silver* of Madison, and oral argument by *Robert D. Silver*.

For the respondents there was a brief by *Flom & Mortensen* of Madison, and oral argument by *Robert Mortensen*.

CURRIE, J.    The defendants raise the following two contentions upon this appeal:

(1) That the structure which they erected was a "below-grade garage which did not violate the restrictions of the plat," and,

(2) It was an abuse of discretion for the trial court to ,refuse to permit the mandatory-injunction portion of the judgment to be amended so as to allow the two side walls of the garage to remain and be used as retaining walls for the proposed driveway into the basement garage.

The defendants raise no question as to the right of plaintiffs to maintain the within action for the enforcement of the restrictive covenant.  The right of plaintiffs so to maintain such action is well established.  See *Mueller v. Schier* (1926), 189 Wis. 70, 78, 205 N. W. 912.

The bill of exceptions contains no transcript of testimony, but in lieu thereof there is a brief stipulation of facts signed by the respective counsel for both plaintiffs and defendants. Such stipulation was before the court below at time of trial, the same having been entered into to obviate the necessity of taking the testimony of the plaintiffs.  In addition to setting forth some of the facts as stated in the statement of facts preceding this opinion, such stipulation contained the following:

"7. That the said plat restrictions were entered into with a design of carrying out a general scheme for the development and improvement of the property by the planner as the developer of the area, for the benefit of the owners of the lots.

"8. That defendant, Carson E. Young, made application for a building permit to the city of Madison and the building permit was granted.

"9. That the surveyor's or engineer's report be admitted as evidence.

"10. That if the plaintiffs were called to testify they would testify that *the proposed garage building shuts off the view of neighboring lot owners* numbered 808 and 810; that they relied on the plat restriction; that *the building is an ugly monstrosity* and juts out from the property, interferes with the grade and 30-foot building line." (Emphasis supplied.)

While only the footings of the garage had been poured at the time the defendants were warned on December 2, 1952, that the erection of such garage constituted a violation of the plat restriction, the defendants proceeded with the construction, so that on May 31, 1953, when application was made for modification of the amended judgment, the building was apparently completed to the extent that it had two side walls, a front, and a roof. It is the claim of plaintiffs that the work of construction proceeded even after the original judgment was entered April 1, 1953, but the record is silent as to this. The surveyor's report referred to in paragraph 9 of the stipulation (which report was included in the bill of exceptions as an exhibit) discloses that all four corners of the defendants' garage projected several feet above the original level of the ground composing defendants' front yard, such differential being at one point six and ninety-seven hundredths feet, but probably the major portion of the building was below the ground surface before such ground had been removed to afford space in which to construct the structure.

Defendants maintain that the words *"on any lot"* in the plat restriction are to be construed as *"on top of any lot,"* and, therefore, because the major portion of the garage was to be set below the grade of the surrounding earth, such structure did not constitute one which violated the restriction. In support of such contention defendants cite *Michigan Boulevard Bldg. Co. v. Chicago Park Dist.* (1952), 412 Ill. 350, 106 N. E. (2d) 359. In that case a portion of the land comprising Grant Park in the city of Chicago had been

dedicated by the original owners for public purposes subject to a restriction that such lands should remain vacant of buildings. One of the questions before the Illinois court was whether the erection of underground parking facilities would not be a violation because the purpose of the restriction was to give an unobstructed view of Lake Michigan to abutting land owners, and such underground parking facilities would not interfere therewith.

A reading of the authorities bearing on the question of the interpretation of building restrictions running with the land, such as imposed by the plat in the instant case, makes it manifest that in properly construing such restrictions, the object which the restrictions were designed to accomplish is to be taken into consideration. 14 Am. Jur., Covenants, Conditions and Restrictions, p. 620, sec. 211. It appears obvious that the two main objectives sought to be accomplished by the restriction before us on this appeal, prohibiting the erection of any building on the 30-foot space lying between the building setback line and the front lotline, are as follows:

(1) To prevent the obstruction of the view of the owners of adjoining properties; and,

(2) To foster and preserve the attractiveness of the platted area as a desirable residential section by requiring that the homes to be erected therein be set back a uniform distance from the street.

Such second objective is an aesthetic one. A residence area in which all the homes are set back a minimum distance from the street with lawns occupying the space between the building line and front lotlines presents a much more attractive appearance than one where buildings are permitted to be erected haphazardly with some so close to the front lotline as to leave little or no space for lawn.

Even if defendants' garage were entirely below the grade so that no portion of its side walls projected above the surface

of the surrounding ground, such a structure would violate the purpose sought to be accomplished by such last-mentioned objective. This is so because there would have been presented to the view of persons passing along the street the exposed front side of the garage eight and one-half feet in height and 27½ feet in width, such garage front being only five feet back from the front lotline. The same could not help but constitute a blemish detracting from the appearance of the neighborhood thus tending to depreciate the value of the properties of the other home owners residing in the near vicinity.

We therefore cannot accept the narrow construction of the word *"on"* contained in the plat restriction contended for by plaintiffs as meaning *"on top of"* so as to hold that only those buildings would be prohibited by the plat restriction which were erected on top of the surface of the ground. The learned trial court properly determined that defendants' garage did constitute a *"building"* within the meaning of the plat restriction.

We now turn to defendants' second contention that it was an abuse of discretion on the part of the trial court to refuse to have modified the mandatory-injunction provision of the judgment so as to have permitted the two side walls of the garage to remain for use as retaining walls to protect the driveway which defendants proposed to construct leading into a garage to be made within the confines of the existing basement of defendants' home. Defendants point out that their home occupies so much of the width of their lot that there is insufficient space to provide a driveway on either side of the house, thus making it impracticable to erect an above-ground garage to the rear of such home. However, such two side walls project a considerable distance above the surface of the surrounding ground and would be an eyesore to the entire neighborhood if permitted to stand.

As to whether a wall or fence erected between the building line and the front lotline would constitute a violation of the plat restriction prohibiting the erection of a *"building"* within such space, 26 C. J. S., Deeds, p. 521, sec. 164, states:

"The marked tendency of the courts is to give effect to the intention of the parties, and, in so doing, to extend the meaning of the term to cover structures that ordinarily would not fall within the strict definition of the word ['buildings']. In a restrictive covenant intended to retain to the grantor an unobstructed view, by prohibiting the erection of any building on a certain part of the premises, the word 'building' includes any structure which will obstruct the view."

The word "grantor" appearing in the above quotation would be applicable to the plaintiffs in the instant action as they stand in the shoes of the plat owner who was the original grantor of defendants' and plaintiffs' premises.

There is an annotation in 23 A. L. R. (2d) 937, on the topic of whether walls or fences constitute a violation of restrictive covenants, such as the plat restriction before us on this appeal. The majority rule appears to be that a wall or a fence may constitute a *"building"* within the meaning of such a restrictive covenant, although Massachusetts has taken a contrary view. Two of the leading cases supporting the majority rule are *Bagiano v. Harrow* (1929), 247 Mich. 481, 226 N. W. 262; and *Wimer v. Yellin* (1926), 286 Pa. 33, 132 Atl. 809.

The Kentucky court of appeals in *Netter v. Scholtz* (1940), 282 Ky. 493, 495, 138 S. W. (2d) 951, 953, states its conclusion on this question as follows:

"From an examination of other authorities we find that the word building in a restrictive covenant intended to restrain obstruction of a view would include any structure having that effect. *Curtis v. Schmidt,* 212 Iowa, 1279, 237 N. W. 463, and this would also be true in case of a restriction requiring buildings to be a certain distance from the property line of lots." (Citing *Bagiano v. Harrow, supra.*)

This court recently held in *Hanlon v. St. Francis Seminary* (1953), 264 Wis. 603, 60 N. W. (2d) 381, that a retaining wall did not constitute a "building" within the meaning of the safe-place statute, but the objective sought to be accomplished by the safe-place statute is entirely different from that of the restrictive plat covenant before us for construction in the instant case.

It is our conclusion that there was no abuse of discretion on the part of the trial court in denying defendants' application to modify the mandatory-injunction portion of the judgment so as to permit the retention of the two side walls of the garage, because in their present condition such walls clearly constitute a violation of the restrictive covenant under the authorities hereinbefore cited. Whether the future erection of retaining walls protecting a private driveway leading into defendants' premises, the top of which would not project above the surface of the surrounding ground, would constitute a violation of the plat restriction we are not called upon to decide on this appeal.

The order of June 12, 1953, denying the application for modification of judgment granted $25 motion costs to the plaintiffs. Counsel for plaintiffs concede that under the provisions of sec. 271.07, Stats., $10 was the maximum sum which could be awarded for such costs.

The plaintiffs' brief and supplemental appendix contains matter not part of the bill of exceptions, and upon the oral argument plaintiffs' counsel apologized for the same and stated that it was due to inadvertence and unfamiliarity with the court rules, this being counsel's first appeal to this court. We are satisfied that counsel acted in entire good faith in the matter, but it would be unfair for plaintiffs, in taxing costs, to recover the costs of the printing of those pages of the brief and supplemental appendix devoted to matters outside of the bill of exceptions.

*By the Court.*—The judgment appealed from is affirmed. The order appealed from is modified so as to reduce the taxable costs from $25 to $10, and, as so modified, is affirmed. In taxing costs for printing plaintiffs' brief and supplemental appendix, the same shall be limited to 30 pages.