Dan BUBOLZ, Margaret Bubolz, Dale Myers, Marilyn Myers, Henry Weiss, Olga Weiss, Felix Wildgruber, Virginia Wildgruber, Lester Gilbertson, Sylvia Gilbertson, John Waldman, and Lila Waldman, Plaintiffs-Respondents-Cross Appellants,

v.

DANE COUNTY, Defendant-Cross Respondent,

Thomas JUNCK, and Linda Junck, Defendants-Appellants-Cross Respondents.

Court of Appeals

*No. 89-0819. Submitted on briefs April 9, 1990.—Decided November 21, 1990.*

(Also reported in 464 N.W.2d 67.)

285

For the defendants-appellants-cross respondents the cause was submitted on the briefs of *Donald B. Bruns* of the *Bruns Law Office* of Madison.

For the plaintiffs-respondents-cross appellants the cause was submitted on the brief of *Irwin Kass* of *Tomlinson, Gillman, Travers & Gregg, S.C.* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.  Thomas and Linda Junck appeal from a trial court judgment declaring that the Juncks' commercial use of their lot violates a restrictive covenant in their deed and enjoining the Juncks from using the lot for commercial purposes. On cross-appeal, twelve members of "Horseshoe Bend" (plaintiffs), the Juncks' subdivision, contend the trial court erred in determining that: (1) the scope of the permanent injunction is sufficiently broad; (2) the town of Verona and Dane County's rezoning of the Juncks' lot to LC–1 is not illegal spot zoning; (3) the Juncks' activity is not a nuisance; (4) the Juncks' claim is not frivolous pursuant to sec. 814.025, Stats.[1]

Both parties also request costs and fees for frivolous appeals pursuant to sec. (Rule) 809.25(3), Stats. We affirm the trial court in all respects and deny both parties costs and fees for frivolous appeals.

[1]Dane County was a defendant in the circuit court and prevailed on the spot zoning issue. It appears in this appeal only as a cross-respondent in plaintiffs' cross-appeal.

# I. BACKGROUND

This case involves a subdivision known as "Horseshoe Bend" in rural Dane county. The property was previously owned by Marilyn and Dale Myers and subdivided by them in the mid-1960's. The Myers retained one lot in Horseshoe Bend and conveyed nine lots to eight separate parties. Of the eight deeds of conveyances, at least three[2] contained restrictive covenants. One of the three conveyances with a restrictive covenant was to Patrick and Corrine Keyes, who later conveyed the property to the Juncks.

The restrictive covenant in the Juncks' deed provides:

> Not more than one (1) single family residence shall be constructed on said premises at a cost of not less than $20,000.00. No basement, tent, shack, or trailer shall be used for a residence, temporarily or permanently. Any construction shall be completed within one (1) year from the date of commencement.

Prior to 1986, all of the lots in the Horseshoe Bend were zoned either R–1 (residential) or RH–1 (rural homes). In 1986, the Juncks applied to the town of Verona and to Dane county for a zoning change to LC–1 (limited commercial). Although the rezoning was opposed by a majority of the property owners in Horseshoe Bend, the measure was passed.

---

[2]At trial, a 1971 deed between the Myers and Gerald and Ruth Vogel containing no restrictive covenants was introduced as Exhibit 31. In the appendix of their brief-in-chief, however, the Juncks identify as "Ex. 31" a *1965* deed between the Myers and the Vogels containing a restrictive covenant. The latter deed was *not introduced at trial, is not part of the record, and we disregard it.*

Plaintiffs brought suit to enforce the restrictive covenant and prevent the Juncks' commercial use of their lot. At trial, evidence was presented establishing that, since 1977, the Juncks had operated an electrical contracting business, T.J. Electric, from their lot. In addition, the Juncks stored business equipment and vehicles on their lot.[3] The Juncks conceded that this use violated their previous R-1 zoning classification.

The trial court determined that the Juncks' use of the lot violated their restrictive covenant. Accordingly, the trial court issued a permanent injunction, enjoining the Juncks from continuing to store business equipment on their property.

## II.  RESTRICTIVE COVENANT

The Juncks argue that the trial court erred in concluding that Horseshoe Bend was established as part of a general plan by the former owners to create a rural neighborhood and that the Juncks' use of the lot violated the restrictive covenant in their deed.

■■■

The existence of a general development plan or scheme is a question of fact determined by examining the intent of the original owners in platting the development, the conditions of the platting, and all surrounding circumstances. *LaValle v. Kulkay,* 277 N.W.2d 400, 402 (Minn. 1979). On appeal, we will not upset a trial court's findings of fact unless they are clearly erroneous. Sec. 805.17(2), Stats. The correct construction of the restric-

[3] At trial, photographs were admitted showing: (1) that on the Junck's lot was a garage and a 30' x 36' shed, both lined with boxes containing electrical supplies; (2) that the Juncks kept numerous vehicles emblazoned with the T.J. Electric logo on the lot, including a bucket truck and a panel van.

tive covenant, however, is a question of law which we review independently. *See Joyce v. Conway,* 7 Wis. 2d 247, 249, 96 N.W.2d 530, 532 (1959).

## A. GENERAL PLAN OR SCHEME

Even in the absence of privity, deed covenants are enforceable by purchasers of land in the same tract, where a common owner imposed restrictions on each parcel of property sold with a general plan or scheme in mind to enhance the value or attractiveness of the tract as a whole. *Crowley v. Knapp,* 94 Wis. 2d 421, 425, 288 N.W.2d 815, 817–18 (1980). In *Hall v. Church of the Open Bible,* 4 Wis. 2d 246, 89 N.W.2d 798 (1958), the court observed:

> It is a well-established rule that a covenant restricting land to residential use, inserted by the proprietor in a conveyance of his lands, inures to the benefit of all the purchasers where it is inserted for the purpose of carrying out a general plan or scheme of development . . . ..

*Id.* at 248, 89 N.W.2d at 799. The question in each case is whether the common grantor placed the restrictive covenant in the deed "for the purpose of carrying out a general plan of development, which was to inure to the benefit of other grantees." *Crowley,* 94 Wis. 2d at 425, 288 N.W.2d at 818.

At trial, a former co-owner, Dale Myers, testified that in conveying the lots in Horseshoe Bend, he had intended to create a "nice residential area." He stated that, as he had envisioned Horseshoe Bend, it would not be used commercially. Questioned why restrictive covenants were not placed in all of the conveyances, he stated

that he placed them in conveyances only to parties he did not know well.

The trial court concluded Myers inserted the restrictive covenants pursuant to a general plan and, as such, their benefit inured to the other property owners in Horseshoe Bend. The court observed:

> I find the evidence very convincing that it was the intent of Mr. Myers to preserve this as a rural residential area, his emphasis being on horses, the evidence of that by the very name that he chose for the street, Horseshoe Bend, by his own activities on the circle, and by the fact that a number of neighbors over the years have at various times kept horses in this rural setting.

We conclude the trial court's determination that a general plan existed is not clearly erroneous. Therefore, plaintiffs are entitled to enforce the restrictive covenant.

## B. CONSTRUCTION

The Juncks' restrictive covenant provides in part that "[n]ot more than one (1) single family residence shall be constructed on said premises at a cost of not less than $20,000.00." The Juncks contend that this clause only limits *construction* on the property, not its *use*. Thus, the Juncks maintain, they may operate an electrical business within the existing buildings. We disagree.

The term "residential," when used in a restrictive covenant, is in contradistinction to "business" or "commercial." *Hunt v. Held,* 107 N.E. 765, 766 (Ohio 1914); *Briggs v. Hendricks,* 197 S.W.2d 511, 513 (Tex. Civ. App. 1946). In *Klapproth v. Grininger,* 203 N.W. 418 (Minn. 1925), the Minnesota Supreme Court stated that:

> While covenants imposing restrictions upon the use
> of property will not be enlarged by construction, they
> will be given the full force and effect intended by the
> parties who created them, and where the language
> used is clear and unambiguous it will be given its
> obvious meaning.

*Id.* at 419 (citations omitted); *see Lavalle,* 277 N.W.2d at 403. In *Boston-Edison Protective Ass'n v. Goodlove,* 227 N.W. 772, 773 (Mich. 1929), the Michigan Supreme Court stated that "[a] covenant restricting the erection of any building, except for dwelling house purposes, applies to the use as well as to the character of the building."

We agree with these decisions. It would be unreasonable not to construe the Juncks' restrictive covenant to cover use. Under the Juncks' interpretation, the Juncks would be free to operate any number of commercial enterprises on their lot so long as they did not construct non-residential buildings. They could, for example, maintain a used car lot or a driving range.

Such an interpretation would negate the general plan of the subdivision. As one court noted:

> If, after a residence has been constructed on a lot
> with a restrictive covenant in the deed, the owner
> could thereafter use the building for a . . . restaurant,
> beauty shop, antique shop, or numerous other uses to
> which, but for the prohibitions in a zoning ordinance,
> it would be suitable and available, the covenant
> would be of little value and the *general plan* of
> restriction, which would otherwise inure to the bene-
> fit of all purchasers, would be circumvented.

*Strauss v. Ginzberg,* 15 N.W.2d 130, 133 (Minn. 1944) (emphasis added).

We conclude the Juncks' commercial use of the lot violated the restrictive covenant in their deed.

## III.  PERMANENT INJUNCTION

The Juncks contend that the trial court erred in imposing a permanent injunction. On cross-appeal, plaintiffs request that the scope of the permanent injunction be broadened. The permanent injunction prohibited the Juncks from:

> [U]sing the property in question for anything other than primarily—single family residential purposes . . . defendants Junck [are prohibited] from engaging in commercial activities, including operating their electrical contracting business . . . on the premises, except insofar as those activities are incidental to their occupation of the premises as their single-family residence.
>
> . . ..
> Defendants Junck are prohibited from using or storing any business-related supplies, inventory, equipment or vehicles in their existing home, garage, or existing 30' × 36' building or in any other buildings or anywhere else on their said premises. The injunction does not prohibit driving a business vehicle containing daily business supplies as personal transportation home by a resident of the home and parking it at the residence between business calls. The injunction does not prohibit a resident in the home from working on and maintaining the books of the business, or answering a business telephone, as an incident to residing there. The injunction prohibits the permanent or long term storage of business inventory, supplies, and business equipment on the premises . . ..

The grant or denial of injunctive relief is within the sound discretion of the trial court and will not be upset absent a showing of an abuse of discretion. *Mercury Records Productions, Inc. v. Economic Consultants, Inc.*, 91 Wis. 2d 482, 500, 283 N.W.2d 613, 622 (Ct. App. 1979). To find an abuse of discretion we must determine either that discretion was not exercised or that there was no reasonable basis for the trial court's decision. *Wisconsin Pub. Serv. Corp. v. Krist*, 104 Wis. 2d 381, 395, 311 N.W.2d 624, 631 (1981).

To obtain an injunction, a plaintiff must show a sufficient probability that the future conduct of the defendant will violate á right of and will injure the plaintiff. *Pure Milk Prod. Coop. v. Nat'l Farmers Org.*, 90 Wis. 2d 781, 800, 280 N.W.2d 691, 700 (1979). Moreover, the party must establish the injury is irreparable, *i.e.,* not adequately compensable in damages. *Id.*

The plaintiffs' request is solely for an injunction. The injury, deterioration of the attractiveness of Horseshoe Bend, could not adequately be compensated by monetary award. We conclude the record provides a reasonable basis for the trial court's decision to impose a permanent injunction.

Plaintiffs contend the permanent injunction is not sufficiently broad. They maintain that, under the permanent injunction, the Juncks could still store a significant amount of electrical supplies on the lot.

Injunctive relief should be tailored to the necessities of the particular case. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975). The trial court's injunction preserved the rural character of Horseshoe Bend. Stor-

age of electrical supplies need not be open or visible. The trial court did not abuse its discretion.

## IV.  CROSS-APPEAL
## A.  ILLEGAL SPOT ZONING

Plaintiffs contend that the town of Verona's rezoning of the Juncks' lot constituted illegal spot zoning.[4] Judicial review of spot zoning determinations is limited to cases involving abuse of discretion, excess of power or error of law. *Buhler v. Racine County,* 33 Wis. 2d 137, 146, 146 N.W.2d 403, 408 (1966). As long as the legislative body acts within the sphere of its authority, its discretion is controlling. *Cushman v. City of Racine,* 39 Wis. 2d 303, 307, 159 N.W.2d 67, 69 (1968).

Spot zoning is the practice of allowing a single lot or area special privileges which are not extended to other land in the vicinity in the same use district. *Howard v. Village of Elm Grove,* 80 Wis. 2d 33, 41, 257 N.W.2d 850, 854 (1977). Spot zoning is not per se illegal. *Ballenger v. Door County,* 131 Wis. 2d 422, 426, 388 N.W.2d 624, 627 (Ct. App. 1986). However, rezoning should be consistent with long-range planning and based on considerations which affect the whole community. *Bell v. City of Elkhorn,* 122 Wis. 2d 558, 568, 364 N.W.2d 144, 148 (1985). Thus, spot zoning should only be indulged in where it is in the public interest and not solely for the benefit of the property owner who request rezoning. *Cushman,* 39 Wis. 2d at 309, 159 N.W.2d at 70-71.

---

[4]We reach this question because, even with restrictive covenant intact, the Juncks' potential use of the lot is broader with LC-1 zoning than with R-1 zoning.

The trial court found that the Dane County Board exercised its discretion in determining that LC-1 zoning was appropriate for the Juncks' electrical business, even though Horseshoe Bend was a residential subdivision. In addition, the court found that the Juncks' electrical business provided a public service both to their immediate neighbors as well as to the entire town of Verona. We conclude these findings of fact are not clearly erroneous. *See* sec. 805.17(2), Stats.

The trial court next determined that the rezoning was in the public interest and not solely for the benefit of the Juncks. *See Cushman,* 39 Wis. 2d at 309, 159 N.W.2d at 70. We agree and conclude the rezoning of the Juncks' lot was not illegal spot zoning.

## B. NUISANCE

Plaintiffs argue that the Juncks' operation constituted a nuisance. We construe plaintiffs' claim as one for relief from a private, rather than public, nuisance. *See Krueger v. Mitchell,* 112 Wis. 2d 88, 103, 332 N.W.2d 733, 741 (1983).

A private nuisance is "an unreasonable interference with the interests of an individual in the use and enjoyment of land." *Id.; see Hoene v. City of Milwaukee,* 17 Wis. 2d 209, 214, 116 N.W.2d 112, 115 (1962). The activity complained of must create more than an inconvenience and must be offensive to a person of ordinary and normal sensibilities. *Bie v. Ingersoll,* 27 Wis. 2d 490, 493, 135 N.W.2d 250, 252 (1965).

The trial court concluded that plaintiff had not adequately shown that the Juncks' activities constituted a private nuisance. We agree.

298

The plaintiffs have not shown that either the volume or the nature of the Juncks' activities is offensive. A large expanse of land separates the Juncks' house and buildings from their closest neighbor. Motor vehicles including trucks are found in any neighborhood.

Horseshoe Bend is a rural, rather than urban, area. The court has previously observed that "what would be a nuisance on the Capital Square in Madison would not be a nuisance in the country." *Abdella v. Smith,* 34 Wis. 2d 393, 400, 149 N.W.2d 537, 540 (1967). We conclude plaintiffs have failed to show the Juncks' activities constituted a private nuisance.

## C. FRIVOLOUS CLAIM

Plaintiffs contend that the Juncks' claim was frivolous. Section 814.025, Stats., allows a court to assess reasonable attorneys fees and costs against a party who brings a frivolous claim. The test of frivolity is whether the claim was "without any reasonable basis in law or equity." Sec. 814.025(3)(b), Stats. The Juncks' claim, though ultimately unsuccessful, was not so devoid of merit as to be frivolous.

## D. FRIVOLOUS APPEAL

Both parties request fees and costs for frivolous appeals. *See* sec. (Rule) 809.25(3), Stats. Neither appeal was frivolous. We therefore deny both requests.

*By the Court.*—Judgment affirmed.