Janet ZINDA, Plaintiff-Respondent,

v.

Werner KRAUSE, Susan Krause, Peter N. Reddin,
Catherine Reddin, David Paprocki, Patricia Paprocki,
Gary Teuber, Gloria Teuber, Jeffrey Paprocki, Jean
Paprocki, Arnold Paprocki, Helen Paprocki, James
Paprocki and Rosemary Paprocki, Defendants-
Appellants,

John LACART, Leann LaCart, Marshall Johnson and
Victoria Johnson, Defendants.

Court of Appeals

*No. 94–1799. Submitted on briefs December 20,
1994.—Decided January 18, 1995.*

(Also reported in 528 N.W.2d 55.)

154

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Thomas L. Shriner, Jr.* and *Kevin P. Whaley,* of *Foley & Lardner* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gregory A. Grobe* and

*Donald L. Romundson* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Werner and Susan Krause, et al. (collectively the appellants), appeal a judgment interpreting a restrictive covenant to preclude them from making certain desired uses of the common area in the North Harbour at Wisconsin Bay Development located in Door County. The appellants contend the trial court erroneously determined that the restrictive covenant prohibited them from making certain uses of the common area because: (1) The covenant is so ambiguous as to be unenforceable; and (2) the language of the covenant does not expressly prohibit the uses they wish to make of the common area. Because the restrictive covenant is unambiguous and the trial court properly concluded that the uses the appellants sought to make of the common area violated the terms of the covenant, the judgment is affirmed.

## FACTS

North Harbour at Wisconsin Bay was developed by Peter and Katherine Reddin and consists of twelve lots. Lots five through nine are shorefront lots (the "shorefront lots") located immediately adjacent to Lake Michigan. The remaining seven lots, one through four and ten through twelve, are located south of the shorefront lots. Although these backlots, referred to as the "shore access lots," do not border Lake Michigan, a tract of land known as the common area provides the owners of these lots with access to the lake.

The common area, located between lots six and seven, borders Lake Michigan to the north. Peter Red-

din created the common area prior to selling any of the North Harbour lots and each of the seven shore access lot owners owns an undivided one-seventh interest in the area. A path, which Reddin built to facilitate access to the lake, runs north and south along the entire length of the common area. The path is approximately nine feet wide and is covered with shredded bark. Reddin maintained the path by using a tractor to spread additional bark over the path each spring.

Prior to selling the lots, Reddin created and recorded a Declaration of Covenants, Restrictions and Easements. The declaration, which contains five articles and twenty-three sections, controls the use and ownership of the subdivision property. Among the provisions contained in the declaration is the following restrictive covenant:

> Each owner of Tracts 1 through 4 and Tracts 10 through 12 shall have the non-exclusive right to the use and enjoyment of the common area. No owner shall do anything or permit anything to be done to the common area which would adversely affect the vegetation and natural beauty of the common area. Those owners having the ownership interest in and right to use the common area shall be responsible for keeping said area in a clean and orderly condition.

In January of 1993, Werner and Susan Krause, who own shore access lot 4 and shorefront lot 5, hired a contractor to initiate the construction of a pier in front of their shorefront lot. The Krauses authorized the contractor to use the common area to transport equipment and materials to the shorefront for the construction of the pier. To facilitate the transport of the equipment, the contractor removed seven trees from the common area, some of which were either dead or dying. Approxi-

162

mately two months after beginning construction on the pier, the Krauses advised the other North Harbour lot owners that they were using the common area in connection with the construction of their pier.

Upon receiving notice of the Krauses' use of the common area, Janet Zinda, owner of shorefront lot 7, filed a two-count complaint against the Krauses, the Reddins and the State of Wisconsin Department of Natural Resources. In the first count of her complaint, Zinda alleged that the Krauses' use of the common area violated the restrictive covenant and requested the court to issue an injunction enjoining the Krauses from continuing further construction on the pier. Additionally, Zinda requested the court to enjoin the Krauses and the Reddins from doing additional damage to the vegetation and natural beauty of the common area. The second count of the complaint alleged that the Krauses' building permit was defective because the DNR failed to provide Zinda with adequate notice of the Krauses' permit application in violation of § 30.02, STATS.

Three preliminary hearings were subsequently held to determine whether a temporary or permanent injunction should be issued enjoining the appellants' activities on the common area. At the conclusion of the second hearing, the court found that Zinda failed to prove that she would suffer irreparable harm in the absence of an injunction and denied her motion for temporary injunctive relief. Approximately one month later, the appellants filed a motion to dismiss the second count of the complaint pertaining to Zinda's allegation that the DNR failed to provide her adequate notice of the Krauses' permit application. The court granted the motion, and the case proceeded on the first count.

Zinda subsequently amended her complaint on two separate occasions, joining all of the North Harbour land owners as defendants. Additionally, Zinda filed a second motion for a temporary injunction. In her motion, Zinda alleged that the appellants were continuing to cut down trees on the common area in violation of the restrictive covenant. Further, Zinda alleged that the appellants intended to install a "dry fire hydrant" and picnic tables on the common area. Zinda claimed that these activities violated the restrictive covenant and, therefore, she requested the court to enjoin these activities as well. The court held a third preliminary hearing to consider the motion. At the conclusion of the hearing, the court granted Zinda's request to enjoin the installation of a dry fire hydrant. The court, however, did not make a ruling on Zinda's allegations concerning the unauthorized tree cutting or the installation of picnic tables. The case then proceeded to trial.

At the bench trial, Zinda argued that the restrictive covenant precluded the appellants from engaging in the following activities on the common area: (1) pruning or cutting trees and vegetation; (2) placing shredded bark on the common area path; (3) constructing a dry fire hydrant; (4) operating vehicles on the common area path; (5) installing or constructing a deck, platform or picnic tables; (6) placing a wooden sign at the entrance of the common area indicating that it is a private area; and (7) placing a fence at the entrance of the path to discourage trespassers. At the conclusion of the trial, the trial court found that the intent of the restrictive covenant was to preserve the common area in its natural state. The trial court then evaluated each activity Zinda sought to enjoin to determine whether the particular activity would jeopardize the natural state of the area. Based on this evaluation,

the trial court concluded that all of the activities, except the fence and the sign, endangered the natural state of the common area and entered judgment enjoining the appellants from engaging in those activities.

## THE RESTRICTIVE COVENANT

The appellants do not dispute that Zinda has standing to enforce the terms of the restrictive covenant. However, the appellants argue that Wisconsin's public policy favors their free and unrestricted use of the common area. *Crowley v. Knapp*, 94 Wis. 2d 421, 434, 288 N.W.2d 815, 822 (1980). The appellants note that "restrictions contained in deeds and in zoning ordinances must be strictly construed to favor unencumbered and free use of property." *Id.* Further, when the meaning of the language in a restrictive covenant is doubtful, "all doubt, under the general rule, should be resolved in favor of the free use thereof for all lawful purposes by the owner of the fee." *Id.* at 438 n.3, 288 N.W.2d at 823 n.3. Here, the appellants claim that the restrictive covenant giving rise to this case is ambiguous because the term "natural beauty" is susceptible to more than one meaning. Accordingly, the appellants argue that the covenant must be construed in favor of their free and unrestricted use of the common area. *Id.*

The interpretation of a restrictive covenant is a question of law that we review independently of the trial court. *Bubolz v. Dane County*, 159 Wis. 2d 284, 291-92, 464 N.W.2d 67, 70 (Ct. App. 1990). Whether the language of a restrictive covenant is ambiguous is also a question of law. *See Lamb v. Manning*, 145 Wis. 2d 619, 627, 427 N.W.2d 437, 441 (Ct. App. 1988). The language in a restrictive covenant is ambiguous if it is

165

susceptible to more than one reasonable interpretation. *See Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990). However, if the intent of a restrictive covenant can be clearly ascertained from the covenant itself, the restrictions will be enforced. *Voyager Village Property Owners Ass'n v. Johnson*, 97 Wis. 2d 747, 749, 295 N.W.2d 14, 15 (Ct. App. 1980). By intent we do not mean the subjective intent of the drafter, but the scope and purpose of the covenant as manifest by the language used. *See Hall v. Church of the Open Bible*, 4 Wis. 2d 246, 248, 89 N.W.2d 798, 799 (1958). Applying these principles of law to the case at bar, we conclude that the restrictive covenant is unambiguous and that its purpose is readily discernable.

The appellants contend that the term "natural beauty" as used in the restrictive covenant requires that the common area be kept in a beautiful state. Accordingly, the appellants argue that the covenant is ambiguous because beauty is a subjective term. We are not persuaded. The restrictive covenant states: "No owner shall do anything or permit anything to be done to the common area which would *adversely affect the vegetation* and natural beauty of the common area." When read in conjunction with that portion of the covenant restricting activities that adversely affect the vegetation, it is apparent that the term natural beauty is intended to prohibit activities that would harm or endanger the natural state of the area. Accordingly, we do not agree that the covenant refers to beauty in a purely abstract sense. Rather, we conclude that natural beauty, as used in the covenant, means the preservation of the area in its natural condition. This is the only reasonable interpretation of the language.

166

Thus, although we agree that beauty may be a subjective impression that varies from person to person, when read in context it is clear that the purpose of the covenant is to restrict those activities that threaten the common area's natural condition. Therefore, because the purpose of the covenant may be clearly ascertained, the trial court properly determined that the covenant was valid and enforceable.

'    The appellants, however, argue that the purpose of· a restrictive covenant is not a sufficient basis upon which to restrict an owner's free use of his or her property. Relying on *Crowley*, the appellants claim that a restrictive covenant is only enforceable against those activities which the covenant expressly proscribes. *Id.* at 434-36, 288 N.W.2d at 822-23. Therefore, the appellants argue that the trial court erred by granting the injunction because the restrictive covenant in this case does not expressly prohibit the activities the trial court enjoined.

■    We are mindful that the Wisconsin Supreme Court has indicated that a restrictive covenant is only enforceable if it imposes the restriction by express terms. *See id.* However, contrary to the argument advanced by the appellants, we do not construe *Crowley* to mean that a restrictive covenant is enforceable only as to those activities specifically enumerated in the covenant itself. Rather, we conclude that where the purpose of a restrictive covenant may be clearly discerned from the terms of the covenant, the covenant is enforceable against any activity that contravenes that purpose. This conclusion is supported by cases decided both before and after *Crowley*.

In *Bubolz*, the restrictive covenant stated: "Not more than one (1) single family residence shall be con-

structed on said premises at a cost of not less than $20,000.00." *Id.* at 290, 464 N.W.2d at 70. The plaintiff argued that under the terms of the restrictive covenant, the defendant was prohibited from using his lot to operate an electrical contracting business. The defendant, on the other hand, claimed that while the covenant proscribed the construction of additional buildings on his lot, it did not restrict the manner in which he could use the lot. Accordingly, the defendant argued that the restrictive covenant did not prohibit him from using his lot to operate his contracting business.

This court, however, rejected the defendant's assertions, emphasizing that restrictive covenants are to "be given the full force and effect *intended* by the parties who created them." *Id.* at 293-94, 464 N.W.2d at 71 (quoting *Klapproth v. Grininger*, 203 N.W. 418, 419 (Minn. 1925)) (emphasis added). The court noted that if it were to accept the defendant's interpretation of the covenant, "the [defendants] would be free to operate any number of commercial enterprises on their lot so long as they did not construct non-residential buildings." *Id.* Because this result would be inconsistent with the purpose of the restrictive covenant, the court affirmed the trial court's decision enjoining the defendant's commercial use of the property. *Id.* at 296, 464 N.W.2d at 72.

Similarly, in *Perkins v. Young*, 266 Wis. 33, 34, 62 N.W.2d 435, 436 (1954), a plat restriction provided: "No building shall be located on any lot in said plat nearer the front lotline than the building line as shown on said plat . . . ." The building line was set back thirty feet from the front line. Despite the restriction, the defendant sought to build an underground garage with a set back of only five feet from the front line. The plaintiffs

subsequently brought suit to enjoin the construction of the garage. The defendant, however, argued that the plat restriction only applied to structures built *on* the lot. Therefore, the defendant claimed that because his garage was being built *beneath* the lot, the plat restriction was inapplicable.

In addressing the defendant's argument, our supreme court first stated:

> A reading of the authorities bearing on the question of the interpretation of building restrictions running with the land, such as imposed by the plat in the instant case, makes it manifest that in properly construing such restrictions, *the object which the restrictions were designed to accomplish is to be taken into consideration.*

*Id.* at 39, 62 N.W.2d at 438 (emphasis added). The court noted that the purpose of the plat restriction was twofold. First, it was designed to prevent the obstruction of the view of other owners. Second, it was intended to foster and preserve the attractiveness of the area by requiring the homes to be set back a uniform distance from the street. *Id.* Examining the defendant's garage in light of the second objective, the court concluded that the garage violated the purpose of the plat restriction. The court stated:

> Even if defendants' garage were entirely below the grade so that no portion of its side walls projected above the surface of the surrounding ground, such a structure would violate the purpose sought to be accomplished by [the second] objective. This is so because there would have been presented to the view of persons passing along the street the exposed front side of the garage eight and one-half feet in height and 27½ feet in width, such garage front being only five feet back from the front lotline. The

same could not help but constitute a blemish detracting from the appearance of the neighborhood . . . .

*Id.* at 39-40, 62 N.W.2d at 438. Therefore, given the objectives of the plat restriction, the court concluded that the word "on" was not limited to buildings built on the surface of the ground and enjoined the defendant's construction of the garage. *Id.*

Based on the foregoing cases, we conclude that a restrictive covenant need not expressly prohibit the specific activity in question in order to be enforceable. *See also Joyce v. Conway*, 7 Wis. 2d 247, 96 N.W.2d 530 (1959); *Voyager Village*, 97 Wis. 2d 747, 295 N.W.2d 14. Although appellants argue that this conclusion is inconsistent with *Crowley*, we note that *Crowley* did engage in an interpretation of the word family in concluding that the word included a group of retarded persons living together in a home. Further, because several cases decided both before and after *Crowley* have looked to the purpose of a restrictive covenant to determine its scope, we conclude that *Crowley* should not be construed to limit the scope of a restrictive covenant solely to those activities which the covenant expressly prohibits. Therefore, we reject the appellants' argument and conclude that the purpose of a restrictive covenant is enforceable.

Having concluded that the purpose of the restrictive covenant is enforceable, we must next determine whether the activities enjoined by the trial court violate the covenant. As we have already noted, the trial court enjoined the appellants from undertaking the following activities: (1) installing or constructing a deck, platform or picnic area on the common area; (2) placing shredded bark on the common area path; (3) operating

motor vehicles on the common area path; (4) trimming or cutting the vegetation on the common area; and (5) placing a dry fire hydrant on the common area. We shall address each of these activities in turn.

*Deck or Platform*: At trial, appellant James Paprocki testified that he would like to construct a small deck or platform on the northern edge of the common area so that his family may enjoy the area in a more comfortable manner. The appellants contend that the deck should be permitted because the developer envisioned a deck in the common area at the time the development was created. We disagree. Where the language of the covenant expresses a purpose contrary to the developer's subjective state of mind, the language of the covenant is controlling. *See Hall*, 4 Wis. 2d at 248, 89 N.W.2d at 799 ("Parol evidence is not admissible to establish any intent other than that clearly expressed in the instrument."); *see also Collins v. Goetsch*, 583 P.2d 353, 358 (Haw. 1978); *Wilcox v. Timberon Protective Ass'n*, 806 P.2d 1068, 1073-74 (N.M. Ct. App. 1990). Here, the declaration contains a covenant restricting any use of the common area that would adversely affect the vegetation or natural state of the area. This restriction is in direct conflict with the developer's alleged state of mind and, therefore, the covenant must govern.

Applying the covenant to this activity, the trial court concluded that the construction of a deck or platform would violate the restrictive covenant because it "would eliminate the naturalness of the area." We agree with the trial court's conclusion. The purpose of the covenant is to preserve the vegetation and natural state of the area. The construction of a deck or platform

171

on the northern edge of the common area would certainly interfere with this purpose. Such a structure would impede the growth of vegetation in that part of the common area, and it would adversely impact the natural condition of the area. Accordingly, we conclude that the trial court did not err by enjoining the construction of a deck or platform on the common area.

*Shredded Bark Path:* The developer of North Harbour first began placing shredded bark on the common area path in 1989, approximately one year before the Declaration of Covenants was recorded. The appellants contend that the shredded bark is necessary to maintain the path and that it should be permitted because it is consistent with the developer's original intent. However, as we have already concluded, the purpose of the covenant takes precedent over the developer's subjective state of mind. Evaluating the shredded bark path in light of the covenant, we conclude that the use of shredded bark violates the purpose of the restrictive covenant. Shredded bark prevents the growth of vegetation on the path, and it interferes with the natural state of the area. Accordingly, the trial court properly enjoined this activity.[1]

*Motor Vehicles:* The use of motor vehicles in the common area is clearly inconsistent with the purpose of the restrictive covenant. The use of such vehicles

---

[1] Although it is not clear from the record, it is possible that the growth of natural vegetation would at some point limit the ability of shore access lot owners to achieve access to the lake. While we need not address this issue at this time, we note that this issue may be revisited if the shore access lot owners can demonstrate that the shredded bark is essential to access the lake.

adversely affects the vegetation in the area and destroys the area's natural condition. Therefore, we conclude that the trial court did not err by enjoining the use of motor vehicles in the common area.

*Trimming of Trees and Shrubs*: The trial court enjoined the trimming of trees and shrubs, except as necessary in the practice of good forestry. This limitation on the trimming or cutting of trees, whether alive or dead, is consistent with the restrictive covenant's purpose of preserving the vegetation and natural state of the common area. This limitation will ensure that vegetation is not needlessly destroyed and that the area is maintained in its natural state. Accordingly, we conclude that the trial court did not err on this matter.

*Dry Fire Hydrant*: The trial court properly enjoined the construction of a dry fire hydrant. The hydrant would be installed on the northern edge of the common area and would consist of a piece of pipe, six inches in diameter, that would protrude approximately two feet out of the ground with a nozzle on the end. The balance of the pipe would be buried beneath the ground and would run into Lake Michigan. The trial court enjoined the construction of the hydrant, concluding that there was no testimony in the record establishing that the hydrant was necessary. We agree with the trial court's conclusion. Further, we note that the construction of a hydrant would be inconsistent with the restrictive covenant because it would detract from the natural condition of the common area. Therefore, we conclude that the trial court correctly enjoined the construction of a dry fire hydrant.

In sum, we conclude that the restrictive covenant is unambiguous and that its purpose is clearly ascertainable from the language of the covenant. Further, we reject the appellants' contention that the restrictive covenant's scope is limited solely to those activities that it expressly prohibits and conclude that the purpose of the covenant is enforceable. Evaluating each of the proposed activities in light of this purpose, we conclude that the trial court properly determined that each of the proposed activities violated the covenant. Therefore, the trial court properly granted Zinda's request for an injunction.

## EQUITABLE RELIEF

The appellants next contend that Zinda is not entitled to equitable relief because she engaged in a fraud upon the court. In what the appellants refer to as the case of the "incredible moving stump," they contend that Zinda submitted photographs into evidence depicting a stump at various locations on the common area. The appellants claim that the stump was not attached to the ground and that Zinda moved the stump from location to location in order to create the illusion that the appellants had destroyed more trees than they actually had.

One of the fundamental tenets of equity is that a person seeking equitable relief must come to the court with clean hands. *Kenosha County v. Town of Paris*, 148 Wis. 2d 175, 188, 434 N.W.2d 801, 807 (Ct. App. 1988). Here, the trial court made no findings as to whether Zinda attempted to perpetrate a fraud upon the court. The court, however, heard the evidence and testimony regarding Zinda's alleged conduct and

reviewed the photographs of the so-called "incredible moving stump." Notwithstanding this evidence, the trial court allowed the use of equitable remedies.

The decision whether to grant equitable relief is within the trial court's discretion. *Pure Milk Prods. Coop. v. National Farmers Org.*, 90 Wis. 2d 781, 800, 280 N.W.2d 691, 700 (1979). This is particularly true where, as here, the allegation of misconduct is a fraud upon the court. The trial court is in a superior position to review the evidence in question, evaluate the demeanor and credibility of the witnesses and determine whether a party has in fact attempted to perpetrate a fraud upon the court. Here, after hearing the evidence, the trial court determined that equitable relief was appropriate and thereby implicitly rejected the appellants' claim that Zinda had engaged in a fraud upon the court. Because this decision is so uniquely within the trial court's discretion, we are loath to disturb the trial court's decision. Therefore, despite the appellants' allegation of misconduct, we conclude that the trial court did not err by granting Zinda equitable relief.

## FRIVOLOUS CLAIM

The appellants' final claim pertains to the second cause of action in Zinda's complaint, in which she alleged that the permit issued by the DNR was ineffective because she did not receive adequate notice of the appellants' permit application as required by § 30.02, STATS. The appellants argue that this claim was frivolous under § 814.025(3)(b), STATS., because Zinda should have known that the claim was without any reasonable basis in law or equity.

175

Whether a claim is frivolous under § 814.025(3)(b), STATS., involves a mixed question of law and fact. *State v. State Farm Fire & Cas. Co.*, 100 Wis. 2d 582, 601-02, 302 N.W.2d 827, 837 (1981). Determining what the party knew or should have known is a question of fact. *Id.* However, whether those facts would lead a reasonable attorney to conclude that the claim is frivolous is a question of law that we review de novo. *Id.* The issue is not whether a party can or will prevail, but whether the claim is so indefensible that the party's attorney should have known it to be frivolous. *Stoll v. Adriansen*, 122 Wis. 2d 503, 517, 362 N.W.2d 182, 189 (Ct. App. 1984). In determining this issue we resolve all doubts in favor of the attorney. *In re Bilsie*, 100 Wis. 2d 342, 350, 302 N.W.2d 508, 514 (Ct. App. 1981).

In this case, the trial court made no findings with respect to the appellants' claim that Zinda's second cause of action was frivolous. Therefore, only a question of law remains, to wit: whether Zinda's attorney knew or should have known the claim was without a reasonable basis in law or equity.

Under § 30.02, STATS., the DNR must give notice "to the clerk of each municipality in which the project is located and to any other person required by law." The department may also "provide notice to other persons as it deems appropriate." Zinda argued that under § 30.02, it was standard practice for the DNR to provide notice to all adjoining landowners whose property would be adversely affected by construction of a pier. Although Zinda is not an adjoining landowner, she contended that she was entitled to personal notice under the DNR's standard practice because the pier would adversely affect her shorefront by causing increased erosion. Additionally, Zinda claimed that because her

property interest would be adversely affected, she was entitled to notice under the basic constitutional principles of due process.

Based on our review of the record, we conclude that Zinda's argument was not frivolous. The record discloses that Zinda made a substantial and plausible argument in support of her claim that she was entitled to notice under § 30.02, STATS., and there is nothing to indicate that this argument was made in bad faith. The mere fact that she did not prevail does not render the claim frivolous. *See Stoll*, 122 Wis. 2d at 515, 362 N.W.2d at 188-89. Therefore, resolving all doubts in favor of Zinda, we conclude that Zinda's claim was not frivolous and that the trial court properly declined to award the appellants sanctions under § 814.025(3)(b), STATS.

*By the Court.*—Judgment affirmed.