# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2019AP1649

Complete Title of Case:

> **DANIEL BUEHRENS, WENDY BUEHRENS, JOHN LETTAU, BARBARA LETTAU, NATHAN HEISLER, MARK ELLINGEN, DEBRA ELLINGEN, HOPPER TRUST, STEPHEN MALIN, JANICE MALIN, WALTER SINISI, ANN MARIE SINISI, ROBERT BINNING, MARY BINNING, MARY J. WENDELS, JEFFREY NELSON, THOMAS TOBIN, ROBERTA TOBIN, ALEXANDER ULLENBERG, AMY ULLENBERG, STEPHAN CLOUTIER, BRIGITTE CLOUTIER, JUSTIN GARRETT, APRIL GARRETT, NICHOLAS MOORE, KATHLEEN MOORE AND BETTY DUNN,**
>
> > **PLAINTIFFS-APPELLANTS,**
>
> **ALL AMERICAN TRUST, DANIEL NETT, AMBRA NETT, SCOTT GILGENBACH, JO GILGENBACH AND JEAN RUSCH,**
>
> > **PLAINTIFFS,**
>
> > **V.**
>
> **MICHAEL SCHAVE AND ROCHELLE SCHAVE,**
>
> > **DEFENDANTS-RESPONDENTS.**

| | |
|---|---|
| Opinion Filed: | October 7, 2020 |
| Submitted on Briefs: | August 13, 2020 |

| | |
|---|---|
| JUDGES: | Neubauer, C.J., Reilly, P.J., and Davis, J. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Steven P. Sager* of *Sager Law Office, S.C.*, Fond du Lac. |

Respondent
ATTORNEYS:          On behalf of the defendants-respondents, the cause was submitted on the brief of *Michael Lim* and *Emily Z. Dunham* of *Reff Baivier Lim Muza Sundet & Dunham, S.C.*, Oshkosh.

| | |
|---|---|
| **COURT OF APPEALS**<br>**DECISION**<br>**DATED AND FILED**<br><br>**October 7, 2020**<br><br>Sheila T. Reiff<br>Clerk of Court of Appeals | **NOTICE**<br><br>This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.<br><br>A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62. |

**Appeal No.    2019AP1649**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018CV576

**IN COURT OF APPEALS**

---

DANIEL BUEHRENS, WENDY BUEHRENS, JOHN LETTAU, BARBARA LETTAU, NATHAN HEISLER, MARK ELLINGEN, DEBRA ELLINGEN, HOPPER TRUST, STEPHEN MALIN, JANICE MALIN, WALTER SINISI, ANN MARIE SINISI, ROBERT BINNING, MARY BINNING, MARY J. WENDELS, JEFFREY NELSON, THOMAS TOBIN, ROBERTA TOBIN, ALEXANDER ULLENBERG, AMY ULLENBERG, STEPHAN CLOUTIER, BRIGITTE CLOUTIER, JUSTIN GARRETT, APRIL GARRETT, NICHOLAS MOORE, KATHLEEN MOORE AND BETTY DUNN,

     PLAINTIFFS-APPELLANTS,

ALL AMERICAN TRUST, DANIEL NETT, AMBRA NETT, SCOTT GILGENBACH, JO GILGENBACH AND JEAN RUSCH,

     PLAINTIFFS,

  V.

MICHAEL SCHAVE AND ROCHELLE SCHAVE,

     DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Fond du Lac County: SCOTT C. WOLDT, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

¶1      NEUBAUER, C.J. The question presented is whether a large structure in a residential subdivision qualifies as a "garage" under the subdivision's restrictive covenant. The undefined "garage" is ambiguous, as it limits neither the size nor structure. Because purported restrictions in covenants must be in clear, unambiguous and peremptory terms in order to restrict the free and unencumbered use of property, we affirm the circuit court's rejection of the neighboring property owners' challenge to the garage. The language and purpose of the covenant and Wisconsin's public policy disfavoring constraints on the free use of property guide our decision. We affirm.

## BACKGROUND

¶2      The footprint of Michael and Rochelle Schaves' building with an electric garage door is thirty-six feet by eighty feet, reaching sixteen feet high. During construction, neighbors contacted the Schaves contending that their "pole barn" violated the subdivision's covenant as its size rendered it something other than a "garage." The Schaves continued construction, and the plaintiffs, neighboring property owners (Neighbors), commenced this action.

¶3      The Neighbors moved for summary judgment, seeking to enforce the restrictive covenant and an order requiring removal of the building. They offered several exhibits and affidavits seeking to show that the Schaves' building is a "pole barn," "pole shed," or a "post framed building," which the Neighbors contend is not a "garage." The Schaves also moved for summary judgment, asserting that any

restriction on free use of property under the covenants must be clear and unambiguous. The Schaves submitted affidavits stating that they planned to use the building as a garage, specifying the vehicles and trailers they planned to store. The court granted the Schaves' motion, reasoning that, because the term "garage" was not qualified, the garage was permissible.[1] The Neighbors appeal.

## DISCUSSION

### *Standard of Review*

¶4 We independently review a grant of summary judgment using the same methodology as the circuit court. ***Pertzsch v. Upper Oconomowoc Lake Ass'n***, 2001 WI App 232, ¶7, 248 Wis. 2d 219, 635 N.W.2d 829. Summary judgment is appropriate if there is no genuine issue of a material fact, and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[2] The interpretation of a restrictive covenant is an issue of law, which we review de novo. ***Zinda v. Krause***, 191 Wis. 2d 154, 165, 528 N.W.2d 55 (Ct. App. 1995). "Whether the language of a restrictive covenant is ambiguous is also a question of law," requiring our independent review. ***Id.***

---

[1] The Schaves also counterclaimed, alleging several Neighbors violated other covenant restrictions. The circuit court granted partial summary judgment to the Schaves, reasoning that certain residents violated the covenants by storing large trucks and trailers on their properties. The Neighbors do not appeal from this portion of the order.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

*Restrictive Covenant Principles*

¶5    Wisconsin's public policy favors the free and unrestricted use of property. *Crowley v. Knapp*, 94 Wis. 2d 421, 434, 288 N.W.2d 815 (1980). "Accordingly, restrictions contained in deeds and in zoning ordinances must be strictly construed to favor unencumbered and free use of property." *Id.* To be enforceable, restrictive covenants which limit "the free use of property must be expressed in clear, unambiguous, and peremptory terms." *Id.* at 435.

¶6    When construing the meaning of a restrictive covenant, we do not look for amorphous general intent or the subjective intent of the drafters, but rather, we determine the meaning of the restriction by the words actually used. *Id.* at 438 & n.3. "[I]f the intent of a restrictive covenant can be clearly ascertained from the covenant itself, the restrictions will be enforced." *Zinda*, 191 Wis. 2d at 166. We derive intent from the "scope and purpose of the covenant as manifest by the language used." *Id.*; *see also Voyager Vill. Prop. Owners Ass'n v. Johnson*, 97 Wis. 2d 747, 749, 295 N.W.2d 14 (Ct. App. 1980) ("camping equipment" unambiguously included camping trailers). "The language in a restrictive covenant is ambiguous if it is susceptible to more than one reasonable interpretation." *Zinda*, 191 Wis. 2d at 165-66.

¶7    Where words are not defined within a restrictive covenant, they are given their ordinary meaning. *See Crowley*, 94 Wis. 2d at 436-37. To discern the ordinary meaning, we often turn to dictionary definitions. *See, e.g.*, *Diamondback Funding, LLC v. Chili's of Wis., Inc.*, 2004 WI App 161, ¶16, 276 Wis. 2d 81, 687 N.W.2d 89. If the meaning of the language remains doubtful, "all doubt, under the general rule, should be resolved in favor of the free use" of the property. *Zinda*, 191 Wis. 2d at 165-66 (quoting *Crowley*, 94 Wis. 2d at 438 n.3).

¶8      The Schaves point to the instructive application of these principles to the word "family" in *Crowley*. The court found that nothing in the restrictive covenant clearly and unambiguously limited the term "family" to a discrete family unit comprised only of individuals related by blood or by law. *Crowley*, 94 Wis. 2d at 436-38. The court noted that a family may mean a group of people who live, sleep, cook, and eat upon a premises as a single housekeeping unit, such as a group of priests. *Id.* Resolving the ambiguous word "family" to favor the free use of property, the eight residents with cognitive impairments did not violate the restrictive covenant. *Id.*

*Interpretation of the Restrictive Covenant*

¶9      We must determine if the undefined term "garage" in the restrictive covenant clearly and unambiguously precludes a building of the size and structure at issue. The covenant states, "In addition to the residence, the only other building to be allowed on said premises shall be a garage."

¶10     As "garage" is undefined, we look to a common dictionary definition, while considering the overall intent of the restrictive covenants, to identify the ordinary meaning of the word "garage." *See Xcel Energy Servs., Inc. v. LIRC*, 2013 WI 64, ¶30, 349 Wis. 2d 234, 833 N.W.2d 665; *Siler v. Read Inv. Co.*, 273 Wis. 255, 261, 77 N.W.2d. 504 (1956) ("The interpretation must be upon the entire instrument and not upon disjointed or particular parts of it."). A reputable dictionary defines "garage" as "a building or compartment of a building used for housing an automotive vehicle." *Garage*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993). Another definition is: "a building or shed for housing a motor vehicle or vehicles." *Garage*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010). The common and ordinary meaning of the term "garage" is not limited to a certain

size or material. The only requirement is that the building be used to store vehicles. The Neighbors offer no competing definition.

¶11 Our case law instructs that we must look to the document as a whole to discern the overall purpose of the restrictive covenants, again, to determine whether the covenant clearly and unambiguously prohibits the large structure. *Zinda*, 191 Wis. 2d at 166, 170.

¶12 Several provisions provide helpful guidance as to the scope of the restriction. The other restrictive covenants provide: "[n]o truck larger than a three-quarter ton truck shall be parked or garaged anywhere in said subdivision." "No trailer or any farm vehicle or farm equipment shall be parked outside." "Only one boat may be parked outside," and it may not exceed twenty feet.

¶13 These provisions permit pickup trucks and boats to be parked inside the garage, and it commands that trailers, farm vehicles, farm equipment, and a second boat or larger boats be parked inside the garage. It follows that large garages must be allowed for inside storage of these items.

¶14 While the Neighbors contend that these provisions do not necessarily mean that these items can be parked inside the garage, we note that the provision precluding large trucks addresses both parked and garaged. The drafters knew how to preclude inside use. Moreover, the failure to restrict explicitly and unambiguously favors the free and unencumbered use.

¶15 Another covenant specifies the permitted dimensions for the homes: single story homes must be 1600 square feet, all others must be no less than 2000 square feet. This restrictive language, compared to the absence of any size limitations for the garage, speaks volumes as it demonstrates that the drafters were

capable of adding limiting language. If the purpose of the covenant were to limit the size of the garage, it could and should have been expressly stated.

¶16    The Neighbors ask us to conduct an external size, construction, and character analysis of the structure, arguing that the Schaves' "post framed" building is not a typical "garage." We decline to do so, as it would add restrictions that are not unambiguously required. Rather, we return to the dictionary definition of the word "garage" to aid our construction. This definition and ordinary meaning of the term "garage" do not contain size or construction restrictions but instead focus on the purpose of the structure: to store vehicles. Related to this, common sense and real-world experience tell us that garages can be constructed using a multitude of different materials and overall design, provided the primary purpose is to store vehicles. More importantly, the covenant expressly permits and/or requires the storage of large pickup trucks, trailers, farm vehicles, farm equipment, and boats inside the garage, which clearly contemplates not only a large structure, but perhaps one that is not constructed from materials used to build a typical two-car garage.

¶17    The Neighbors look to *Zinda* in support of their argument that we should still enforce the restrictive covenant despite the fact that the document does not enumerate all prohibitions that could flow from the covenant—here, size and structure. In *Zinda*, the court enjoined a property owner from building a deck and making other changes to the common area of the lakeside community. *Id.* at 170-71. The restrictive covenant stated that the owners were prohibited from doing anything to the common area "which would *adversely affect the vegetation* and natural beauty of the common area." *Id.* at 166. Not surprisingly, because the covenant described but did not identify the specific activities to be prohibited, the court found that the "restrictive covenant need not expressly prohibit the specific activity in question in order to be enforceable." *Id.* at 170.

7

¶18    The ***Zinda*** court found that the provision was unambiguous: its purpose was clearly ascertainable from the language of the covenant. ***Id.*** at 166, 174. While "natural beauty" may be a subjective impression, when read in conjunction with that portion of the covenant restricting activities that adversely affect the vegetation, the court found it was apparent that the term natural beauty was intended to prohibit activities that would harm or endanger the common area's natural condition. ***Id.*** at 166-67. Thus, after reviewing the purpose of the descriptive language as it applied to the unidentified activities contemplated, the court found that activities such as cutting trees, maintaining a wood chip path, driving vehicles on the path, and building a deck would adversely affect the common areas' natural state. ***Id.*** at 170-74.

¶19    We agree that, under ***Zinda***, we are to look to the "purpose of a restrictive covenant to determine its scope"—here, the scope of the term "garage." ***Id.*** at 170. As explained above, we have done so and determined that "garage" is ordinarily defined by its purpose, which is to store vehicles, including large pickup trucks, and here, also trailers, farm tractors, farm equipment, and boats. Thus, neither "garage" or the dictionary definitions nor the purpose of the restrictive covenant unambiguously limit the size or structure of a garage in the subdivision, i.e., it is ambiguous as to any intent to limit the size and structure of the building.[3]

---

[3] Although not controlling, we find ***Sabatini v. Roybal***, 261 P.3d 1110 (N.M. Ct. App. 2011), persuasive. There, the court found that "private garage" in a restrictive covenant was ambiguous as to any size limitation, looked to a dictionary definition to find its ordinary meaning, and concluded that, absent a clear and unambiguous restriction, the rule of construction favoring the free use of land compelled the conclusion that the purpose was to store vehicles with no size limitation. *Compare with* ***Johnson v. Dawson***, 856 N.E.2d 769, 773 (Ind. Ct. App. 2006) (limit on size of "garage" to "not more than three cars" enforced).

*Application*

¶20    The material facts are undisputed.  The Schaves testified that they will only store vehicles and trailers in the garage.  While the Neighbors present hypothetical future uses, such as an airplane hangar, we limit our analysis to the dispute before us.  However, we reiterate that the essential purpose of the covenant's permitted "garage" is a structure to store vehicles and the other identified items.[4]

*Conclusion*

¶21    The term "garage" in the subdivision's restrictive covenant does not unambiguously preclude the Schaves' garage based on its size and structure. Following well-established Wisconsin law, we must favor the free and unencumbered use of property when purported restrictions in covenants are not in clear, unambiguous, and peremptory terms.  We affirm the court's order dismissing this action.

*By the Court*.—Order affirmed.

---

[4]  While the Neighbors complain that the large structure lends itself to "commercial" type storage, or use as a barn, we note that the covenants restrict use to one private residential dwelling per lot and preclude use "for business or commercial purposes of any nature," and also preclude livestock.