DIAMONDBACK FUNDING, LLC, Plaintiff-Appellant,

v.

CHILI'S OF WISCONSIN, INC., Defendant-Respondent.

Court of Appeals

*No. 03–2376. Oral argument July 7, 2004.—Decided July 27, 2004.*

2004 WI App 161

(Also reported in 687 N.W.2d 89.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John A. Busch* of *Michael Best & Friedrich LLP*, of Milwaukee. There was oral argument by *John A. Busch*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Paul D. Bauer* of *Quarles & Brady*, of Milwaukee. There was oral argument by *Paul D. Bauer*.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. Diamondback Funding, LLC, appeals from a summary judgment dismissing its verified complaint against Chili's of Wisconsin, Inc. Diamondback sought, in addition to "[o]ther relief," to enjoin Chili's from building and operating a Chili's Grill and Bar on a lot next to a lot owned by Diamondback on which Diamondback's corporate affiliate operates a Tumbleweed Southwest Mesquite Grill and Bar. We reverse.

## I.

¶ 2. The Diamondback lot is in Franklin, Wisconsin. Diamondback bought the lot from Home Depot USA, Inc., in July of 1999. As part of the sale, Home Depot agreed, as material to this appeal, "to deed restrict the adjoining outlot (the 'Outlot') to prohibit the operation of any casualty [*sic*—should be "casual"], theme-type restaurants specializing in Mexican food." (Parenthetical in original.)

¶ 3. In April of 2000, Home Depot sold to Rose Properties, LLC, the outlot referred to in the July 1999 agreement with Diamondback. Home Depot and Rose agreed in a contemporaneous "Restrictive Covenants Agreement," dated April 5, 2000, that, as material here: "No portion of the [outlot] may be leased, used or occupied as or for a . . . Mexican restaurant . . . or any other restaurant (except for . . . (ii) a fast food restaurant, provided such fast food restaurant does not serve primarily Mexican food)." The agreement specifically recited that all the restrictive covenants "shall run with the land and be binding upon Rose and each of Rose's tenants, subtenants and other occupants, and its and their respective successors and assigns."

¶ 4. In May of 2002, Home Depot and Rose purported to modify the April 2000 restrictive covenant to, among other things:

- "clarify that the establishment and operation of a Chili's Grill & Bar is a permitted use of the" outlot; and

- delete the "Mexican restaurant . . . or any other restaurant (except for . . . (ii) a fast food restaurant, provided such fast food restaurant does not serve primarily Mexican food)" language from the April 5, 2000, Restrictive Covenants Agreement, and, in its place, substitute: "or any casual theme-type restaurant specializing in Mexican food."

Diamondback was not a party to the purported modifications. Rose sold the lot to Chili's in July of 2002.

¶ 5. As noted, the trial court granted summary judgment to Chili's and dismissed Diamondback's complaint seeking to enjoin Chili's from running its restaurant on the lot. It ruled that the "specializing in Mexican food" language was "ambiguous on its face" and, therefore, was not enforceable. The trial court explained in its oral decision:

> I don't know what that term means. I wouldn't know how to begin to instruct a jury on it. And it seems to me we would be left with one, or the fact finder, one fact-finder saying, well, specializing means it's got to be 95 percent or a hundred percent or 75 percent or 51 percent and, or do they look at it from the standpoint of profits.

The trial court did not address whether the restrictive covenant in the Chili's/Rose April 2000 contract ("Mexican restaurant . . . or any other restaurant (except for . . . (ii) a fast food restaurant, provided such fast food restaurant does not serve primarily Mexican food)") was also, in its view, "ambiguous."

86

¶ 6. Summary judgment is used to determine whether there are any disputed facts that require a trial, and, if not, whether a party is entitled to judgment as a matter of law. Wis. Stat. Rule 802.08(2); *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 86, 440 N.W.2d 825, 827 (Ct. App. 1989). Our review of a trial court's grant of summary judgment is *de novo. Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). Additionally, interpretation of a restrictive covenant and, as a corollary, whether the covenant is too ambiguous to be enforced are also legal issues that are subject to our *de novo* review. *Zinda v. Krause*, 191 Wis. 2d 154, 165, 528 N.W.2d 55, 59 (Ct. App. 1995). Whether to grant or deny an injunction is vested in the trial court's reasoned discretion. *Bubolz v. Dane County*, 159 Wis. 2d 284, 296, 464 N.W.2d 67, 72 (Ct. App. 1990). "A discretionary determination will be sustained where it is demonstrably made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law." *State v. Seigel*, 163 Wis. 2d 871, 889, 472 N.W.2d 584, 592 (Ct. App. 1991).

¶ 7. As noted, the trial court granted summary judgment to Chili's dismissing Diamondback's verified complaint because it viewed the "specializing in Mexican food" language to be "ambiguous on its face" and, therefore, an unenforceable restriction. But that ruling frames only part of the issue presented for our review.

¶ 8. Chili's does not dispute that the April 2000 restrictive covenant prohibiting on the lot conveyed to Rose "a . . . Mexican restaurant . . . or any other restaurant (except for . . . (ii) a fast food restaurant, provided

such fast food restaurant does not serve primarily Mexican food)" was drafted and inserted to comply with Home Depot's obligation to Diamondback "to prohibit the operation of any casual[] theme-type restaurants specializing in Mexican food" on that lot. Chili's also does not dispute that, accordingly, Diamondback was a third-party beneficiary of the Home Depot/Rose restrictive covenant, which was binding on Chili's because it ran with the land. *See Boyden v. Roberts*, 131 Wis. 659, 666–669, 111 N.W. 701, 703–704 (1907) (real property is burdened with restriction that runs with the land).

¶ 9. It is black-letter law that a contract provision designed to benefit a third party may not either be rescinded or modified without consent of that third party. *Seher v. Kurz*, 13 Wis. 2d 398, 402, 108 N.W.2d 529, 532 (1961). Diamondback did not consent to the purported May 2002 modification. Accordingly, the May 2002 modification could not and did not dilute Diamondback's rights in the restrictive covenant in the April 2000 Chili's/Rose contract. Thus, the May 2002 modification, which purported to "clarify that the establishment and operation of a Chili's Grill & Bar is a permitted use of the" lot sold by Home Depot to Rose was a nullity. And the purported modification in the restrictive-covenant language from "[n]o portion of the [outlot] may be leased, used or occupied as or for a . . . Mexican restaurant . . . or any other restaurant (except for . . . (ii) a fast food restaurant, provided such fast food restaurant does not serve primarily Mexican food)" to "or any casual theme-type restaurant specializing in Mexican food" is also a nullity to the extent that it

might permit a restaurant barred by the April 2000 restrictive covenant, an issue that we do not decide.[1]

---

[1] Chili's asserts that Diamondback waived reliance on the April 2000 restrictive covenant by not arguing it to the trial court. We disagree. First, Diamondback's verified complaint averred: "On or about April 5, 2000, Home Depot conveyed Parcel 2 to Rose Properties LLC ('Rose Properties'), pursuant to a Warranty Deed, which restricted Parcel 2 by prohibiting the operation of <u>any</u> restaurant (except for an Old Country Buffet or a fast-food restaurant that does not serve primarily Mexican food) on Parcel 2." (Underlining in original.) The complaint also averred that when Diamondback learned that Rose was going to sell the lot subject to the restrictive covenant "to Chili's for the purposes of operating a Chili's Grill and Bar," Diamondback "advised Rose Properties that Diamondback intended to enforce the deed restriction prohibiting the operation of any restaurant." According to Diamondback's verified complaint, Home Depot and Rose then purported to modify the April 2000 restrictive covenant. Reading Diamondback's complaint with the liberality required by Wis. Stat. Rule 802.02(1), *see Korkow v. General Casualty Co. of Wisconsin*, 117 Wis. 2d 187, 193, 344 N.W.2d 108, 111–112 (1984), Diamondback sufficiently framed the issue presented to the trial court to encompass whether Chili's restaurant violates the April 2000 restrictive covenant. Diamondback's failure to argue the April 2000 restrictive covenant language is therefore not a waiver. *See State v. Weber*, 164 Wis. 2d 788, 789, 476 N.W.2d 867, 868 (1991) (noting distinction between an issue raised and "discrete arguments that may be made, pro or con, in the disposition" of that issue) (on motion for reconsideration); *cf. Fletcher v. Eagle River Mem'l Hosp., Inc.*, 156 Wis. 2d 165, 178–180, 456 N.W.2d 788, 794–795 (1990) (party not bound by concession on legal issue). Moreover, we may, of course, consider matters not first presented to the trial court. *Wirth v. Ehly*, 93 Wis. 2d 433, 443–444, 287 N.W.2d 140, 145–146 (1980).

¶ 10. As Diamondback asserts, the restrictive-covenant language requires a two-step analysis. First, is the language itself ambiguous? Second, if it is not, does it apply to the Chili's restaurant? We address these matters in turn.

A. *Alleged ambiguity of the restrictive covenant.*

¶ 11. First, the parties agree that Chili's is a "casual theme-type restaurant." Second, we discern no substantive difference between a restrictive covenant prohibiting a restaurant serving "primarily Mexican food" and one prohibiting a restaurant "specializing in Mexican food," although arguably both seem to cast a wider net than one prohibiting a "Mexican restaurant."

¶ 12 *Zinda* states the rule in Wisconsin as to whether a restrictive covenant is too vague to be enforced:

> The language in a restrictive covenant is ambiguous if it is susceptible to more than one reasonable interpretation. However, if the intent of a restrictive covenant can be clearly ascertained from the covenant itself, the restrictions will be enforced. By intent we do not mean the subjective intent of the drafter, but the scope and purpose of the covenant as manifest by the language used.

*Id.*, 191 Wis. 2d at 165–166, 528 N.W.2d at 59 (citations omitted). The restrictive covenant in *Zinda* prohibited property owners from doing "anything or permit[ing] anything to be done to the common area which would adversely affect the vegetation and natural beauty of the common area." *Id.*, 191 Wis. 2d at 162, 528 N.W.2d at 57. Those whose activities were allegedly proscribed

complained that the phrase "natural beauty" was too vague to be enforced because it implicated subjective assessments that would, per force, vary from one person to another. *Id.*, 191 Wis. 2d at 166, 528 N.W.2d at 59. *Zinda* disagreed, noting that the "natural beauty" language only kicked in when it was harmed by something that "adversely affect[ed]" the vegetation. *Ibid. Zinda* explained:

> [A]lthough we agree that beauty may be a subjective impression that varies from person to person, when read in context it is clear that the purpose of the covenant is to restrict those activities that threaten the common area's natural condition. Therefore, because the purpose of the covenant may be clearly ascertained, the trial court properly determined that the covenant was valid and enforceable.

*Id.*, 191 Wis. 2d at 167, 528 N.W.2d at 59.

¶ 13. Chili's contends, however, that under *Crowley v. Knapp*, 94 Wis. 2d 421, 288 N.W.2d 815 (1980), a restrictive covenant may not be enforced unless it is "expressed in clear, unambiguous, and peremptory terms." *Id.*, 94 Wis. 2d at 435, 288 N.W.2d at 822. Of course. But the restrictive covenants here *are* clear, unambiguous, and peremptory.

¶ 14. In *Crowley* the restrictive covenant limited construction on the land to "one single family dwelling" that would not "house more than one family." *Id.*, 94 Wis. 2d at 431, 288 N.W.2d at 820. The trial court held that the restrictive covenant limited occupancy to persons " 'who were related to one another by blood or marriage and who resided in such dwelling as a single housekeeping unit.' " *Id.*, 94 Wis. 2d at 434, 288 N.W.2d at 822. It thus ruled that occupancy of the house by

those whom *Crowley* characterized as unrelated adult "retarded citizens," *id.*, 94 Wis. 2d at 432, 288 N.W.2d at 821, violated the restrictive covenant, *id.*, 94 Wis. 2d at 434, 288 N.W.2d at 822. *Crowley* determined otherwise and, giving an expansive reading to the word "family," held that the proposed occupancy did not violate the restrictive covenant. *Id.*, 94 Wis. 2d at 435–440, 288 N.W.2d at 822–824. Significantly, *Crowley* did *not* hold that the restrictive covenant in that case could not be enforced because it was ambiguous. Rather, *Crowley* held that the projected use did not violate the covenant: "We conclude that, although the plaintiffs had the equitable right to enforce restrictive covenants contained in all the [applicable] deeds, no covenant was violated." *Id.*, 94 Wis. 2d at 440, 288 N.W.2d at 824.

¶ 15. As we have seen, the trial court determined that the word "specializing" in the context of the modified restrictive covenant was too ambiguous to be enforced, and did not address whether, in its view, the word "primarily" in the original restrictive covenant encumbering the land that Home Depot conveyed to Rose was similarly too vague to be enforced. On our *de novo* review, we conclude that neither "specializing in" something nor "primarily" is ambiguous.

¶ 16. A recognized dictionary defines "specializing" as "To concentrate on a particular activity or product: *The shop specializes in mountain-climbing gear.*" THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1730 (3d ed. 1992) (italics in original); *see Seigel*, 163 Wis. 2d at 886, 472 N.W.2d at 590 ("common meaning of words may be established by using a recognized dictionary"). Similarly, in the context here, the word "specialize" is defined by another recognized dictionary as "to concentrate one's efforts : develop or pursue a specialty <~ in copyright law> <their restau-

rants ~ in Swedish cuisine>." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2186 (1993). The word "primarily" is similarly defined: "Chiefly; mainly: *a scholastic program primarily for seniors; a primarily middle-class neighborhood*," THE AMERICAN HERITAGE DICTIONARY at 1438 (italics in original); "FUNDAMENTALLY, PRINCIPALLY <has now become ~ a residential town—S.P.B. Mais>," WEBSTER'S at 1800. This is all just common sense and reflects the common use of our language that, as applied here, really needs no formal, cited, "definition."

¶ 17. Of course, both "specializing in" and "primarily" require a fact-finder to discern what activities meet the standards. But we routinely delegate such fact-finding assessments in situations requiring greater sifting and filtering: the "ordinary care" and "substantial factor" tests in negligence cases, and the "beyond reasonable doubt" standard in criminal cases come readily to mind, as does the use in WIS. STAT. § 980.01(7) of the phrase "substantially probable," which "when construed according to its common and appropriate usage to mean 'much more likely than not,' is not unconstitutionally vague." *State v. Curiel*, 227 Wis. 2d 389, 395, 597 N.W.2d 697, 700 (1999).[2] Significantly, even experienced judges have difficulty with assigning a percentage threshold to the phrase "beyond a reasonable doubt," *see Guzman v. St. Francis Hosp., Inc.*, 2001 WI App 21, ¶ 4 n.3, 240 Wis. 2d 559, 569 n.3, 623 N.W.2d 776, 781 n.3 ("survey of federal trial judges in the Eastern District of New York discovered that their estimates of what, in a probabilistic sense, was required to satisfy the 'beyond a

[2] WISCONSIN STAT. § 980.01(7) defines a "[s]exually violent person" as someone who has a history of "sexually violent" crimes and "who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence."

reasonable doubt standard' 'ranged from 76 to 90 percent, with 85 percent the modal response' ") (quoted source omitted), upon which depends the freedom of so many criminal defendants.

¶ 18. Similarly, in the First Amendment area, we have asked fact-finders to apply far more arcane concepts than "specializing in" or "primarily":

> What appeals to "prurient interest in sex" must be judged by community standards. What amounts to "patently offensive" in the manner of description is not expressly defined in *Miller* [*v. California,* 413 U.S. 15, 24 (1973)], but it is reasonable to read this term, too, as being determined by contemporary community standards. There is no vagueness in the commonly accepted meaning of the terms "literary, artistic, political or scientific value" and these are qualified by the adjective "serious" which means important and not trifling.

*State ex rel. Chobot v. Circuit Court*, 61 Wis. 2d 354, 360, 212 N.W.2d 690, 693 (1973) (citations and parenthetical omitted); *see also Hamling v. United States*, 418 U.S. 87, 98 n.8, 110–117 (1974) (federal statute proscribing "[e]very obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance" not impermissibly vague) (collecting cases). That the standard may be difficult to apply in a particular case does not alter the verity that the concepts of "primarily" and "specializing in" are clear. Additionally, that various fact-finders may apply those concepts differently in apparently similar cases does make the concepts themselves ambiguous or vague. *See Smith v. United States*, 431 U.S. 291, 309 (1977) ("[T]he possibility that different juries might reach different conclusions as to the same material does not render the statute [proscribing obscene material] unconstitutional."). The restrictive covenants are valid.

94

B. *Application of the restrictive covenant to Chili's.*

¶ 19. The parties dispute whether Chili's is a "Mexican restaurant," a restaurant that serves "primarily Mexican food," or is a restaurant "specializing in Mexican food." The plethora of conflicting material they have each submitted on the subject leaves us no doubt but that whether Chili's falls within any of the restrictive-covenant proscriptions must, under the summary judgment standards we have previously noted, be decided by a fact-finder. In order to get an injunction, Diamondback must show that Chili's will injuriously violate Diamondback's rights by maintaining a restaurant on the lot that either serves "primarily Mexican food," or is a restaurant "specializing in Mexican food," or is a "Mexican restaurant," and, also, that its "injury is irreparable, *i.e.,* not adequately compensable in damages." *Bubolz,* 159 Wis. 2d at 296, 464 N.W.2d at 72; *cf. Lake Bluff Hous. Partners v. City of S. Milwaukee,* 2001 WI App 150, ¶ 10, 246 Wis. 2d 785, 792, 632 N.W.2d 485, 488–489 (trial court has discretion to order razed building constructed in violation of zoning ordinance). The summary judgment record on these issues also reveals that there are genuine disputes of material fact that require a trial. Further, because it appears to us, as it did to the trial court, that Home Depot may be a necessary party to any further proceedings in this case, *see* WIS. STAT. RULE 803.03(1), the trial court on remand should consider any motion made by Diamondback to assert claims against Home Depot in light of whatever objections may be made by Home Depot or Chili's.

*By the Court.*—Judgment reversed and cause remanded with directions.