Richard Forshee, Jean Forshee,
Judith Timmerman, Verlan E. Edwards,
Mary L. Edwards on behalf of Verlan &
Mary Edwards LLP, Robert R. Olson and
Janet A. Olson, Plaintiffs-Respondents,†

v.

Lee Neuschwander and Mary Jo Neuschwander,
Defendants-Appellants.

Court of Appeals

*No. 2016AP1608. Submitted on briefs April 25, 2017.
—Decided June 13, 2017.*

2017 WI App 43

† Petition for Review Filed.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Anne Berleman Kearney* of *Appellate Consulting Group*, Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Linda I. Coleman of Spears, Carlson & Coleman, S.C.*, Washburn.

A nonparty brief was filed by *Cori Moore Lamont* of *Wisconsin REALTORS® Association*, Madison.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. STARK, P.J. Lee and Mary Jo Neuschwander appeal an order denying their summary judgment motion and instead granting summary judgment in favor of their neighbors, Richard and Jean Forshee, Judith Timmerman, Verlan Edwards, Mary Edwards on behalf of Verlan & Mary Edwards LLP, and Robert and Janet Olson (collectively, the Neighbors). The Neighbors argued that, by renting their property to others on a short-term basis, the Neuschwanders violated a restrictive covenant prohibiting "commercial activity" on the Neuschwanders' lot. The circuit court agreed that short-term rentals violated the restrictive covenant. At the Neighbors' request, the court issued an injunction prohibiting the Neuschwanders from renting their property on a short-term basis, except during the weekend of the American Birkebeiner cross country ski race.

¶ 2. We conclude the restrictive covenant is ambiguous as to whether short-term rentals of the Neuschwanders' property are prohibited. Because restrictive covenants must be clear and unambiguous in order to be enforced, the circuit court erred by concluding the Neuschwanders' short-term rentals violated the restrictive covenant. We therefore reverse the order granting summary judgment to the Neighbors and enjoining the Neuschwanders from renting their property on a short-term basis. We remand with directions

166

that the circuit court enter summary judgment in favor of the Neuschwanders.[1]

## BACKGROUND

¶ 3. The following background facts are undisputed. The Neuschwanders own a single-family waterfront residence in Hayward located on Sorenson Drive, a private, dead-end road. Each of the Neighbors also owns property on Sorenson Drive, either adjacent to or near the Neuschwanders' property. Both the Neuschwanders' property and the Neighbors' properties are subject to the following restrictive covenants:

1. No dwelling can be erected on said property with a living space of less than 1,000 square feet.

2. There shall be no subdivision of the existing lots.

3. There shall be no commercial activity allowed on any of said lots.

¶ 4. The Neuschwanders began renting out their property on a short-term basis in 2014. They advertised the property both in printed media and online as "Lake Point Lodge." A listing for the property on the vacation rental website vrbo.com specified it was available for minimum stays of two to seven nights, for a

---

[1] In the alternative, the Neuschwanders argue that, even if the circuit court properly determined short-term rentals violated the restrictive covenant, the court erroneously exercised its discretion by granting an injunction. Because we conclude, as a matter of law, that short-term rentals do not violate the restrictive covenant, we need not address the Neuschwanders' alternative argument regarding the propriety of granting injunctive relief. *See Turner v. Taylor*, 2003 WI App 256, ¶ 1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

maximum of fifteen overnight guests. During the year 2015, the Neuschwanders rented their property to over 170 people. They received $55,784.93 in rent, including taxes, and they paid the City of Hayward $4,973.81 in room tax.

¶ 5. In January 2016, the Neighbors filed the instant lawsuit, alleging short-term rentals of the Neuschwanders' property violated the restrictive covenant prohibiting "commercial activity" on the Neuschwanders' lot. The Neighbors sought an injunction prohibiting the Neuschwanders "from using [their] property as a vacation rental." In their answer, the Neuschwanders admitted renting out their property on a short-term basis; however, they denied that such rentals violated the restrictive covenant prohibiting "commercial activity" on their lot.

¶ 6. Both sides ultimately moved for summary judgment. In its written decision, the circuit court observed the term "commercial" is commonly defined as "viewed with regard to profit." The court concluded the Neuschwanders had "clearly" profited from the short-term rentals of their property. The court also relied on the affidavit of James Correll, one of the individuals involved with the creation of the parties' subdivision, for the proposition that the "purpose of the restrictive covenant was to ensure and maintain a quiet neighborhood where people would know their neighbors." The court reasoned the short-term nature of the Neuschwanders' rentals "and the high volume of different people staying in the neighborhood" violated that purpose. The court therefore concluded the restrictive covenant prohibited the short-term rentals.

¶ 7. Accordingly, the circuit court issued an order granting summary judgment to the Neighbors and denying the Neuschwanders' summary judgment mo-

tion. The court enjoined the Neuschwanders from renting their property on a short-term basis, except during the weekend of the American Birkebeiner cross country ski race. The Neuschwanders now appeal.

## DISCUSSION

¶ 8. We independently review a grant of summary judgment, using the same methodology as the circuit court. *Pertzsch v. Upper Oconomowoc Lake Ass'n*, 2001 WI App 232, ¶ 7, 248 Wis. 2d 219, 635 N.W.2d 829. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2015–16). Here, the circuit court determined the Neighbors were entitled to summary judgment because the restrictive covenant prohibited the Neuschwanders from renting out their property on a short-term basis. The interpretation of a restrictive covenant is a question of law. *Pertzsch*, 248 Wis. 2d 219, ¶ 7.

¶ 9. Wisconsin's public policy favors the free and unrestricted use of property. *Crowley v. Knapp*, 94 Wis. 2d 421, 434, 288 N.W.2d 815 (1980). "Accordingly, restrictions contained in deeds . . . must be strictly construed to favor unencumbered and free use of property." *Id.* In order to be enforceable, deed restrictions must therefore be expressed "in clear, unambiguous, and peremptory terms." *Id.* at 435. When the meaning of language in a restrictive covenant is doubtful, all doubt should be resolved in favor of the property owner's free use. *Zinda v. Krause*, 191 Wis. 2d 154, 165, 528 N.W.2d 55 (Ct. App. 1995).

169

¶ 10. Whether a restrictive covenant is ambiguous is a question of law. *Id.* A restrictive covenant is ambiguous if its language is susceptible to more than one reasonable interpretation. *Id.* "However, if the intent of a restrictive covenant can be clearly ascertained from the covenant itself, the restrictions will be enforced." *Id.* at 166. In this context, "intent" does not mean the subjective intent of the drafter, but rather "the scope and purpose of the covenant as manifest by the language used."[2] *Id.*

¶ 11. The restriction at issue in this case prohibits "commercial activity . . . on any of said lots." The phrase "commercial activity" is undefined. However, we may consider dictionary definitions in order to determine the ordinary meanings of terms used in a restrictive covenant. *See, e.g., Diamondback Funding, LLC v. Chili's of Wis., Inc.*, 2004 WI App 161, ¶ 16, 276 Wis. 2d 81, 687 N.W.2d 89. As relevant here, the term "commercial" is defined as "concerned with or engaged in commerce" or "making or intended to make a profit." *Commercial,* NEW OXFORD AMERICAN DICTIONARY (2001). "Commerce" is defined as "the activity of buying and selling, esp. on a large scale." *Commerce,* NEW OXFORD AMERICAN DICTIONARY (2001). Applying these definitions to the instant case, the restrictive covenant prohibits the Neuschwanders from engaging in activity on their

---

[2] In this way, the analysis used to interpret restrictive covenants is different from the standard analysis used to interpret other contracts. In interpreting other contracts, when faced with ambiguity, a court considers extrinsic evidence to determine the parties' intent. *See Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶ 10, 266 Wis. 2d 124, 667 N.W.2d 751.

lot that is concerned with the activity of buying and selling, or activity by which they make or intend to make a profit.

¶ 12. We conclude reasonable minds could differ as to whether short-term rentals of the Neuschwanders' property meet this standard. On one hand, it is undisputed that the Neuschwanders make money, and intend to make money, and by inference a profit, by renting their property to others on a short-term basis. In addition, by selling to tenants the right to use their property, the Neuschwanders appear to engage in "commerce"— that is, the activity of buying and selling. *See id.* This suggests that short-term rentals of the Neuschwanders' property *do* constitute commercial activity.

¶ 13. On the other hand, however, the actual use of the property by the short-term tenants is residential in character—they use the Neuschwanders' property as a dwelling. Moreover, the restrictive covenant specifically prohibits commercial activity "on" the Neuschwanders' lot. There is no evidence that any actual exchange of money occurs "on" the Neuschwanders' lot, or that the Neuschwanders use the lot as an office space to manage or promote their short-term rentals. No goods are purchased or sold "on" the property. Stated differently, there is no evidence the actual "activity" on the lot, by either the Neuschwanders or their tenants, is anything other than residential. The commercial activity of elsewhere purchasing the residential use of the property does not render the actual activity "on" the property commercial. This suggests the Neuschwanders' short-term rentals *do not* constitute commercial activity "on" the property.

¶ 14. Because reasonable minds could differ as to whether the restrictive covenant prohibits short-term

171

rentals, we conclude the covenant is ambiguous. Nevertheless, "if the intent of a restrictive covenant can be clearly ascertained from the covenant itself, the restrictions will be enforced." *Zinda*, 191 Wis. 2d at 166. Here, the circuit court relied on the affidavit of James Correll, one of the individuals involved with the creation of the parties' subdivision, for the proposition that the purpose of the Neuschwanders' restrictive covenant was "to ensure and maintain a quiet neighborhood where people would know their neighbors." The court determined short-term rentals of the Neuschwanders' property violated that purpose.

¶ 15. A court may consider "the intent" of a restrictive covenant when interpreting its provisions. However, as noted above, "intent" in this context does not refer to "the subjective intent of the drafter" but instead refers to the "scope and purpose of the covenant *as manifest by the language used." Id.* (emphasis added). The court must be able to "clearly ascertain[]" the covenant's intent *"from the covenant itself." Id.* (emphasis added). The circuit court therefore erred by going beyond the text of the Neuschwanders' restrictive covenant and considering extrinsic evidence to determine the covenant's intent.

¶ 16. Moreover, the language of the restrictive covenant does not support the circuit court's findings that the covenant's intent is to "to ensure and maintain a quiet neighborhood where people would know their neighbors," and that short-term rentals violate that intent. The first provision in the restrictive covenant prohibits the erection of any dwelling with a living space of less than 1,000 square feet. This restriction does not appear to have anything to do with maintaining a quiet neighborhood where people know

172

their neighbors. In fact, it could be argued that, by requiring larger dwellings, which are likely able to accommodate more people, the minimum dwelling size restriction actually increases the total number of people in the neighborhood and resulting activity or noise.

¶ 17. The restrictive covenant next prohibits the subdivision of existing lots. Again, this restriction does not seem to have any effect on whether the subdivision's occupants know their neighbors. It does show an intent to keep the population density of the neighborhood low. However, short-term rentals have no clear effect on population density; even if a property is rented on a short-term basis to multiple families, at any given point in time there will only be a single family (or equivalent group) residing on the property.

¶ 18. Finally, the restrictive covenant prohibits "commercial activity" on the subject lots. The most that can be said regarding this restriction is that it demonstrates an intent to limit activities on the subject lots to residential uses. However, as discussed above, there is no evidence that either the Neuschwanders' or their tenants' use of the Neuschwanders' property is anything other than residential. *See supra* ¶ 13.

¶ 19. Thus, when read together, the restrictive covenant's three provisions do not clearly show that the intent of the covenant is to maintain a quiet neighborhood where people know their neighbors. The restrictive covenant, as a whole, does not clearly indicate any purpose or intent that would allow us to conclude the prohibition of "commercial activity" on the subject lots was intended to preclude short-term rentals.

¶ 20. Case law from other jurisdictions supports our conclusion that the restrictive covenant in this case does not unambiguously bar short-term rentals.

For instance, in *Yogman v. Parrott*, 937 P.2d 1019, 1020 (Or. 1997), the Oregon Supreme Court considered a restrictive covenant that required the affected lots to be "used exclusively for residential use" and prohibited any "commercial enterprise" on those lots. After reviewing dictionary definitions similar to those set forth above, *id.* at 1021–22, the court concluded the term "commercial enterprise" was ambiguous, reasoning:

> If a "commercial enterprise" is any undertaking or systematic purposeful activity involving business dealings of any kind, then the covenant covers defendants' use of the property, because the short-term vacation rentals systematically and purposefully generate revenue from arm's-length transactions. On the other hand, if a "commercial enterprise" requires a business organization that has profit as its primary aim, then the covenant does not cover defendants' use, because the facts shown do not demonstrate that defendants are a business organization or that they have profit as their primary aim (as would be true, for example, of a bed-and-breakfast business).

*Id.* at 1022. The court further concluded the "context" of the disputed provision did not clarify the ambiguity, noting that none of the other provisions in the restrictive covenant "relate[d] to short-term rentals or elaborate[d] on any portion of the disputed provision." *Id.* The court therefore held the restrictive covenant did not prohibit short-term rentals, *id.* at 1023, based on the maxim that "restrictive covenants are to be construed most strictly against the covenant; and unless the use complained of is plainly within the provisions of the covenant it will not be restrained," *id.* at 1022 (quoted source omitted).

174

¶ 21. The North Carolina Court of Appeals reached a similar conclusion in *Russell v. Donaldson*, 731 S.E.2d 535, 537 (N.C. Ct. App. 2012), which involved a restrictive covenant that prohibited lots from being used "for business or commercial purposes." The *Russell* court concluded the covenant at issue was ambiguous because it failed to define the phrase "business or commercial purposes." *Id.* at 538. The court resolved the ambiguity "in favor of the unrestrained use of the land." *Id.*[3]

[3] Several other state appellate courts have concluded restrictions similar to the one at issue in this case *unambiguously* do not prohibit short-term rentals. For instance, in *Pinehaven Planning Board v. Brooks*, 70 P.3d 664, 665 (Idaho 2003), the Idaho Supreme Court considered a restrictive covenant that stated "[n]o commercial or industrial ventures or business of any type may be maintained or constructed" on any residential lot. In concluding this covenant unambiguously failed to prohibit short-term rentals, the court reasoned, "The only building on the [defendants'] property remains a single-family dwelling and renting this dwelling to people who use it for the purposes of eating, sleeping, and other residential purposes does not violate the prohibition on commercial and business activity as such terms are commonly understood." *Id.* at 668.

Appellate courts in Colorado, Alabama, and New Mexico have similarly concluded restrictions like the one in this case unambiguously fail to prohibit short-term rentals. *See Slaby v. Mountain River Estates Residential Ass'n*, 100 So. 3d 569, 571, 580–82 (Ala. Civ. App. 2012) (short-term rentals not prohibited by restriction stating subject property is "restricted to single family residential purposes only" and "[n]o commercial, agricultural or industrial use shall be permitted"); *Houston v. Wilson Mesa Ranch Homeowners Ass'n*, 360 P.3d 255, 256, 259–60 (Colo. Ct. App. 2015) (short-term rentals not prohibited by restriction stating subject lots "shall be residential tracts" and "[n]o lands within [the subdivision] shall ever be occupied or used for any commercial or business purpose . . . ."); *Mason Family Trust v. Devaney*, 207 P.3d 1176, 1177–79 (N.M. Ct. App. 2009) (short-term rentals not prohibited by restriction stating

¶ 22. *Yogman* and *Russell* support our conclusion that the restrictive covenant in this case is ambiguous with respect to whether short-term rentals are prohibited. Because the restriction is ambiguous, it cannot be enforced against the Neuschwanders to prevent them from renting out their property on a short-term basis. *See Crowley*, 94 Wis. 2d at 435 (deed restrictions unenforceable unless expressed in "clear, unambiguous, and peremptory terms"). The circuit court therefore erred by granting the Neighbors' summary judgment motion. Accordingly, we reverse the court's order and remand with directions that the court enter summary judgment in favor of the Neuschwanders.

*By the Court.*—Order reversed and cause remanded with directions.

property "shall be used for dwelling purposes only" and "no part thereof shall at any time be used for business or commercial purposes").

The circuit court relied on an unpublished federal district court case in support of its conclusion that the short-term rentals at issue in this case violated the Neuschwanders' restrictive covenant. *See Gibbs v. Williams*, No. 14–cv-420–jdp, 2015 WL 5440628 (W.D. Wis. Sept. 14, 2015). In *Gibbs*, an attorney malpractice case, the restrictive covenant prohibited the use of the property at issue "for the purpose of any trade, manufacture or business of any description." *Id.* at *1. The court concluded that, by renting their property on a short-term basis, the plaintiffs used the property for the purpose of business. *Id.* at *3–4. Given the different wording of the covenants at issue, we do not find the *Gibbs* court's analysis persuasive. Moreover, as the foregoing summary shows, the majority of courts that have considered the issue have determined restrictive covenants prohibiting "commercial" or "business" use do not prohibit short-term rentals.