COURT OF APPEALS
DECISION
DATED AND FILED

September 5, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2117**

STATE OF WISCONSIN

Cir. Ct. No. 2017CV208

IN COURT OF APPEALS
DISTRICT IV

---

THOMAS G. ZEAL AND CHRISTINE M. ZEAL,

PLAINTIFFS-APPELLANTS,

V.

RON HILL ESTATES ARCHITECTURAL CONTROL COMMITTEE,
KELLY ERRTHUM, STEVEN J. ERRTHUM, ELIZABETH A. QUINN,
RUSSELL C. QUINN, THOMAS K. SCHENKEL, MELISSA SCHENKEL,
PETER J. SWENSON, LANA J. SWENSON, DUANE A. BERNET,
JOHN L. BJERKE, STORMIE A. BJERKE, BRANDON J. BUSCH,
ALLISON J. BUSCH, LEE R. SHERVEN, DEBORAH K. SHERVEN,
JEREMY J. ACE, KARIN R. FEHRMAN A/K/A KARIN R. ACE,
STEVEN P. MUELLER, CATHERINE MUELLER, CRAIG R. JOHNSON,
KRISTI M. JOHNSON, GERALD L. ANDERSON, BETH A. ANDERSON,
MARK W. VINJE AND CARMEN L. PRECHEL,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Green County: THOMAS J. VALE, Judge. *Reversed and cause remanded with directions*.

Before Fitzpatrick, P.J., Blanchard, Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.    Thomas and Christine Zeal, lot owners in a residential subdivision, appeal an order denying their summary judgment motion and granting summary judgment in favor of the other subdivision lot owners and the subdivision's Architectural Control Committee (collectively, "the neighbors"). Under restrictive covenants that govern lots in the subdivision, the Committee must approve proposed alterations to existing structures on any lot.    The Committee denied the Zeals' request to build a second attached garage based on a covenant that governs garages.

¶2    The Zeals sought declaratory relief in circuit court, namely, a declaration that the garage covenant does not prohibit the Zeals from adding a second attached garage, and also sought an order that the Committee must grant the Zeals' request.  The circuit court rejected this relief.  The court instead agreed with the neighbors that the garage covenant unambiguously restricts each lot to a single attached garage and granted summary judgment to the neighbors.

¶3    Case law requires that, in order to be enforceable, restrictive covenants must be "'expressed in clear, unambiguous, and peremptory terms.'" ***Diamondback Funding, LLC v. Chili's of Wis., Inc.***, 2004 WI App 161, ¶13, 276 Wis. 2d 81, 687 N.W.2d 89 (quoting ***Crowley v. Knapp***, 94 Wis. 2d 421, 435, 288 N.W.2d 815 (1980)).  We conclude that the garage covenant does not contain a clear, unambiguous, and peremptory prohibition on the Zeals' lot having more than one attached garage.  Accordingly, we reverse the order granting summary judgment in the neighbors' favor.  Further, because the neighbors concede that

summary judgment in favor of the Zeals is appropriate if the garage covenant does not contain such a prohibition, we remand with directions that the circuit court enter summary judgment in the Zeals' favor.

## BACKGROUND

¶4     The Declaration of Restrictions and Covenants for the subdivision ("the covenants") governs specified uses of the Zeals' lot.  Under § 7.01 of the covenants, lot owners seeking to erect or alter structures on their lots are required to obtain approvals from a committee of lot owners established under the covenants, known as the "Architectural Control Committee."   Section 7.01 requires submitting to the Committee detailed plans meeting certain specifications.[1]

¶5     At all times pertinent to this appeal, the Zeals' lot has had a single dwelling with a three-car attached garage.   The Zeals submitted plans and specifications to the Committee pursuant to § 7.01 seeking approval to build a second three-car attached garage.

_____

[1]  Section 7.01 reads in full:

> Section 7.01.   General Provisions.   No dwelling, building or structure shall be erected, placed or altered on any Lot until the construction plans and specifications and a plot plan showing the location of the structure have been approved by the Architectural Control Committee as to quality of workmanship and materials, harmony of exterior design with existing structures in the subdivision and as to location with respect to topography and finish grade elevation.   The plot plan must indicate the top of the foundation of the proposed structure in relation to the nearest street and the proposed water drainage patterns of the Lot.   Approval of the proposed plans shall not be granted in the event that the proposed finished grade elevation and drainage patterns are not compatible with the adjacent Lots and the overall drainage plan for [the subdivision].

¶6      The Committee eventually took the position that the plans and specifications submitted by the Zeals complied with the review provisions of § 7.01. However, the Committee denied the request on the ground that § 4.03 of the covenants prohibits the Zeals from constructing a second attached garage.

¶7      Section 4.03, which we will call "the garage covenant," is the primary focus of this appeal. The garage covenant reads in its entirety: "Garages. All dwellings must have at least a two car (and not more than three car) attached garage."

¶8      The Zeals commenced this action against the neighbors in circuit court, seeking a declaration that the covenants do not prevent the Zeals from building the second attached garage described in their plans and specifications.

¶9      Both sides moved for summary judgment. The circuit court concluded that the neighbors presented the only reasonable interpretation of the garage covenant, and on this basis granted their summary judgment motion and denied the Zeals' motion. The court's order declared that the garage covenant prohibits the Zeals from building a second attached garage and granted the neighbors their attorney fees under a covenant that calls for shifting onto any lot owner found in violation of the covenants the attorneys fees expended in enforcement.[2]

¶10     The Zeals appeal. We will address additional background as needed below.

---

[2] The Zeals do not present a standalone challenge to the grant of the neighbors' attorneys' fees, but our reversal of the circuit court's summary judgment order removes their obligation to pay the fees.

4

**DISCUSSION**

¶11     The parties dispute whether the garage covenant prohibits the Zeals from building a second attached garage.  The neighbors focus their arguments exclusively on the garage covenant and do not argue that, if it does not prohibit the second attached garage, some other covenant does.  Nor do the neighbors argue that the Zeals' requested relief of summary judgment is otherwise inappropriate.[3]

¶12     We summarize applicable legal standards, then present the parties' interpretations of the garage covenant and explain our conclusion.

¶13     We review a grant or denial of summary judgment independently of the circuit court, applying the same standards as employed by the circuit court. *Solowicz v. Forward Geneva Nat'l, LLC*, 2010 WI 20, ¶13, 323 Wis. 2d 556, 780 N.W.2d 111.  This includes when summary judgment is rendered pursuant to granting or denying a request for declaratory relief, "particularly [a request for declaratory relief] that turns upon a question of law." *Olson v. Town of Cottage Grove*, 2008 WI 51, ¶33, 309 Wis. 2d 365, 749 N.W.2d 211.  Summary judgment is appropriate in cases in which there is no genuine issue of material fact and the moving party has established his or her right to judgment as a matter of law.  WIS. STAT. § 802.08(2).

---

[3] The Committee initially took the position that a covenant limiting the number and scale of permitted outbuildings on each lot was a further basis to deny the Zeals' request to build a second garage.  However, after this action was filed, the neighbors have conceded both in the circuit court and on appeal that the second attached garage proposed by the Zeals would not violate the covenant limiting outbuildings.

¶14    The interpretation of a restrictive covenant and the determination of whether the language of a restrictive covenant is ambiguous present questions of law. *Zinda v. Krause*, 191 Wis. 2d 154, 165, 528 N.W.2d 55 (Ct. App. 1995).

¶15    To repeat, restrictive covenants may not be enforced unless they are "'expressed in clear, unambiguous, and peremptory terms.'"[4] *Diamondback*, 276 Wis. 2d 81, ¶13 (quoting *Crowley*, 94 Wis. 2d at 435).    Ambiguity includes the circumstance in which the pertinent text is susceptible to more than one reasonable interpretation. *See* *Solowicz*, 323 Wis. 2d 556, ¶36.

¶16    By the same token, if the intent or purpose of a covenant *is* clear from its terms, it is to be strictly enforced. *See* *id.*, ¶36 (citing *Zinda*, 191 Wis. 2d at 166); *see also* *id.*, ¶41 ("Courts do not determine the reasonableness of … unambiguous servitudes.").    Under this rule, a covenant "need not expressly prohibit the specific activity in question; when the purpose is ascertainable, the document should be construed to give effect to that purpose." *See* *id.*, ¶36 (citing *Bubolz v. Dane Cty.*, 159 Wis. 2d 284, 294, 464 N.W.2d 67 (Ct. App. 1990)).

¶17    The parties present competing interpretations of the garage covenant. According to the Zeals, it establishes nothing more or less than the following: each dwelling is required to have at least one attached garage, which shall have a two- or three-car capacity.    They argue that, on the topic of the number of attached garages any dwelling must or can have, the covenant exclusively addresses the *minimum* number of attached garages (each dwelling must have at least one), and

---

[4] Because this may be a somewhat uncommon use of the term "peremptory," we provide the following definitions:  "Final; absolute; conclusive; incontrovertible." *Peremptory*, BLACK'S LAW DICTIONARY, p. 1318 (10th ed. 2014).

therefore it could not unambiguously establish a *maximum* number of attached garages.

¶18   The neighbors contend that the garage covenant mandates that there be one, *and only one*, attached garage with a two- or three-car capacity.  In the alternative the neighbors contend that, even if the garage covenant does not prohibit multiple attached garages, it places an aggregate car-capacity limit for all attached garages on each lot of not less than two cars and not more than three cars.  Under this view, the Zeals have already reached the maximum allowed attached garage capacity of three cars and impermissibly seek a total attached garage capacity of six cars.

¶19   As we describe in more detail below, we conclude that the garage covenant does not unambiguously prohibit the Zeals from constructing a second attached garage.  After explaining this conclusion, we further explain why we reject the neighbors' arguments.

*A.  Plain Meaning Interpretation*

¶20   As we now explain, the garage covenant does not contain a prohibition on additional attached garages that is expressed in clear, unambiguous, and peremptory terms.  Specifically, when examining the textual elements of the garage covenant individually and as a whole, the provision does not clearly express a maximum number for attached garages.

¶21   To repeat, the garage covenant reads:  "All dwellings must have at least a two car (and not more than three car) attached garage."  To begin, the verb phrase "must have" gives the garage covenant the character of a requirement, but not in the form of a maximum number of attached garages.  There can be no

reasonable dispute that the phrase "must have" in the garage covenant expresses a command that each dwelling must possess an attached garage, without clearly expressing a prohibition on the possession of *additional* attached garages.

¶22     Next, the phrase "at least," preceding "a ... garage," means "not less than."     *Least*, AMERICAN HERITAGE DICTIONARY (https://www.ahdictionary.com/word/search.html?q=at+least) (defining the idiom, "at least").  This is in contrast to a phrase like "at most," which is not used here and means "not more than."     *Most*, AMERICAN HERITAGE DICTIONARY (https://www.ahdictionary.com/word/search.html?q=most)  (defining  "at  (the) most" as "[a]t the maximum").

¶23     Significantly,  the  indefinite  article  "a,"  which  the  parties  agree modifies  "garage,"  does  not  necessarily  mean  "one  and  only  one,"  as  would clearly impose a prohibition on more than one attached garage.  "[I]t is common knowledge  that  in  the  English  language,  while  the  indefinite  article  'a/an' sometimes  does  signify  one-and-only-one,  it  may  in  the  alternative  'precede  a noun when the thing named is not already known to the reader.  In other words, the indefinite article 'a' often means 'any' (rather than 'only one').'"  *Local 321, Int'l Ass'n of Fire Fighters v. City of Racine*, 2013 WI App 149, ¶19, 352 Wis. 2d 163, 841 N.W.2d 830 (quoted source omitted).  Therefore, it is reasonably debatable whether the "a" in the phrase "at least a two car (and not more than three car) attached garage" sets a maximum limit on the number of attached garages at one, or may instead allow for additional garages, beyond "a" "garage."

¶24     The remaining language in the garage covenant modifies "garage" in ways that do not place a limit on the number of attached garages.  "[T]wo car (and not more than three car)" describes the car *capacity* of an "attached garage"—how

many cars an attached garage can accommodate—while "attached" signifies that all garages being referred to are connected to dwellings.

¶25    As can be readily seen in this summary, there is no clear expression of a maximum number of attached garages per lot.  In the absence of any such language, we cannot conclude that the covenant expressly prohibits the building of a second attached garage.

¶26    Combining textual elements, it is reasonable to interpret the garage covenant as setting only a floor on the number of attached garages, establishing the minimum number at one.  This would match the Zeals' interpretation, under which "[a]ll dwellings," are required ("must") to possess ("have") a minimum of ("at least") one—but not necessarily only one—("a[n]") "attached garage."  Given this reasonable interpretation, even if the neighbors could demonstrate an alternative, and also reasonable, interpretation that sets a maximum on the number of attached garages at one, the covenant would not clearly express a prohibition on the Zeals building a second garage.

¶27    It is easy to imagine a covenant expressing, in clear, unambiguous, and peremptory terms, a rule that lot owners shall not build more than one attached garage, using phrases such as "shall be limited to" or "not more than." As the Zeals point out, such phrases are used elsewhere in the covenants of the subdivision here.[5]  And, case law provides an example of a covenant that unambiguously limited the number "private garages" that could be built on a lot. *See **Pietrowski v. Dufrane***, 2001 WI App 175, ¶¶8-9, 18, 247 Wis. 2d 232, 634

---

[5] Examples include one covenant that "[m]ulti-family dwellings are prohibited" and another that  "[a]ll dwellings shall be limited to two stories excluding the basement."

N.W.2d 109 (rejecting equitable defenses to enforcement of covenant stating that on each lot "there shall be built no building other than a one family dwelling house and a private garage for not more than three automobiles").

¶28    The neighbors contend that the only reasonable plain language interpretation of the garage covenant is that it clearly and expressly prohibits the building of second attached garage by requiring that there be one and only one garage that has the capacity for "at least" two cars and "not more than" three cars. We need not describe the neighbors' plain language argument in detail, because it has a fatal flaw.  The flaw is that, to the extent that the argument has merit, it establishes only the following:  most of the language in the attached garage covenant addresses the *capacity* of one attached garage and not the number of attached garages allowed.  This does not even begin to equate to the expression of a prohibition on the number of attached garages, much less one with the clarity required by case law.  One way of summarizing our conclusion is that the neighbors fail to come to grips with the following point:  a rule that a person must possess one X is not equivalent to a rule that the person may not possess more than one X.

¶29    In essence, the neighbors ask us to insert into the garage covenant words that the drafters omitted or to otherwise rewrite the covenant.  *See Columbia Propane, L.P. v. Wisconsin Gas Co.*, 2003 WI 38, ¶12, 261 Wis. 2d 70, 661 N.W.2d 776 ("In constructing a contract, 'courts cannot insert what has been omitted or rewrite a contract made by the parties.'") (quoted source omitted); *Solowicz*, 323 Wis. 2d 556, ¶¶34-35, 42-43 (describing interpretation of restrictive covenants as a form contract interpretation favoring free use of property).

¶30    As summarized above, the neighbors further argue that, even if we conclude that the garage covenant does not prohibit the building of additional attached garages, it nonetheless creates a "clear restriction" that all attached garages on any lot can have an aggregate capacity of no more than three cars. This argument fails because, as we have explained, "two car" and "not more than three car" modify "garage," specifically the clearly required first attached garage, without any indication of a limit on the building of additional attached garages.

¶31    The neighbors alternatively argue that interpreting the garage covenant in a way that does not prohibit additional attached garages, with no aggregate limit on car capacity, renders the three-car capacity maximum "superfluous." If by "superfluous" the neighbors mean that the three-car capacity maximum would necessarily be meaningless, this is obviously not true. A clear meaning would be that the required initial attached garage must have two or three car spaces.

B. *Absurdity*

¶32    The neighbors apparently intend to argue that the garage covenant must be interpreted to prohibit building more than one two- or three-car attached garage because any other interpretation would render the limitation expressed in the phrase "no more than three car" an absurd rule. The absurdity, they suggest, is that no drafter of restrictive covenants for a residential subdivision would ever intentionally limit a required initial attached garage to a maximum capacity of three cars (showing a clear purpose to limit the capacity of attached garages) and also fail to prohibit owners from building as many adjacent attached garages as an owner would like (abandoning any purpose of limiting the total capacity of attached garages on a lot).

¶33    We are not persuaded that this is an obvious absurdity, one that could not possibly have been intended by the drafters of the attached garage covenant. First, the three-car capacity maximum does not reflect a clear purpose to limit the total capacity of all attached garages on a lot; the covenant evinces a clear purpose only to limit the capacity of the required initial attached garage. Second, it would not be absurd for the drafters to have decided that the *initial* buyer of each individual lot must build at least one attached garage of the specified capacity of two or three cars, and that the garage covenant is concerned only with that initial attached garage. After that, the drafters' thinking could reasonably have been that it would be possible, but unlikely, that a lot owner would entertain the idea of building an additional attached garage, and in that assumed rare event other covenants including Section 7.01 would provide sufficient protection of pertinent subdivision interests. The neighbors fail to account for such possible rationales.

¶34    As part of their absurdity argument, the neighbors raise hypotheticals but fail to incorporate them into developed, supported arguments. They suggest that, if the garage covenant does not create a maximum limit, then there is nothing that would allow the neighbors to prevent the addition of third or fourth garages to dwellings in the subdivision. We assume, without deciding, that it would be absurd for any subdivision with restrictive covenants to fail to provide some means of prohibiting the building of as many as four attached garages on a single lot. Even with this assumption, however, the neighbors fail to persuade us that the Committee here could not reject specific applications for specific third or fourth attached garages, with their corresponding driveways, in order to protect subdivision interests as clearly expressed in existing covenants, such as § 7.01, which prohibits designs out of harmony with exterior features of other buildings or

when there are genuine issues regarding grading or drainage. This absurdity argument fails to take into account the possibility that some significant percentage of hypothetical owners' submissions of detailed specifications for attached garages, beyond the required initial garage, might in fact pose legitimate problems under various covenants other than the garage covenant. The neighbors concede that there are no such problems with the Zeals' current proposal.

## C. Purpose Of Covenants

¶35 The neighbors make two arguments related to what they submit is the ascertainable or readily apparent purpose of the covenants generally and of the garage covenant specifically. First, the neighbors contend that interpreting the garage covenant as not including an express prohibition on multiple attached garages "threatens to defeat the very purpose" of the covenants generally. The neighbors point to an opening passage of the covenants, which identifies their general purpose as "protect[ing] and preserv[ing] the values" of the lots in the subdivision "for the mutual benefit and protection of all owners of [l]ots."[6] Second, the neighbors rely on case law to contend that, even if the garage covenant does not expressly impose a maximum number of attached garages per dwelling, it has an ascertainable purpose to do so. We address these purpose-related arguments in turn.

¶36 The neighbors assert that the absence of a prohibition on multiple attached garages would run contrary to the ascertainable purpose of preserving lot

---

[6] The neighbors also point to the purpose, expressed in § 7.01, of preserving "harmony of exterior design" of buildings within the subdivision. However, they fail to develop a standalone argument based on this purpose, beyond what they argue about the purpose of preserving lot values that we address in the text.

values, because additional attached garages would lower the value of each lot with more than one attached garage, as well as the values of some or all other lots in the subdivision. However, the neighbors fail to explain why we must conclude that the building of multiple attached garages on a single lot violates the purpose of lot-value preservation. The neighbors' argument calls for extrinsic evidence, which we cannot consider in the context of interpreting restrictive covenants, and which is in any case lacking in the record here. *See **Forshee v. Neuschwander***, 2017 WI App 43, ¶¶10 n.2, 15, 377 Wis. 2d 162, 900 N.W.2d 100 (circuit court erred "by going beyond the text" of restrictive covenant "and considering extrinsic evidence to determine the covenant's intent"), *aff'd on divided grounds*, 2018 WI 62, ¶15, 381 Wis. 2d 757, 914 N.W.2d 643.

¶37  There may be common sense to the proposition that it might adversely affect property values if owners are allowed to build multiple attached garages on some lots in some subdivisions, depending on all circumstances. However, there might also be common sense to the notion that allowing at least some additional attached garages, at least in some subdivisions, might *increase* values. Further, the authors of a set of covenants generally intended to protect property values might not draft each individual covenant with the goal of perfectly maximizing property values of each lot. In any case, at issue here is whether there is an express prohibition on attached garages in *this subdivision*, as contemplated in *these covenants*. And the neighbors cannot point to any statement in the declaration here linking the property value concern to a purported prohibition on additional attached garages.

¶38  The neighbors attempt to bolster their argument regarding the general property-value purpose of the covenants by drawing parallels to our published decision in ***Bubolz***. Aspects of this argument are difficult for us to

track, but the following is our best effort at summarizing and addressing the argument.

¶39  In *Bubolz*, we upheld an injunction prohibiting the use of a residential dwelling as a business, because the dwelling was subject to a restrictive covenant that there "shall be" "[n]ot more than one (1) single family residence" on any lot. *Bubolz*, 159 Wis. 2d at 290. We held that this covenant could be enforced to prohibit business *use* of the single family home because the opposite approach would "negate the general plan of the subdivision" to create a subdivision consisting entirely of single family homes. *Id.* at 294. The neighbors here contend that we should treat the garage covenant here like the covenant in *Bubolz*, which lacked an express prohibition on business activity, but was nonetheless held to prohibit business activities because it had the ascertainable purpose of limiting use to residential: even though the garage covenant here lacks an express prohibition on additional attached garages, it should nonetheless be held to prohibit additional attached garages because an ascertainable purpose of the garage covenant is to preserve lot values.

¶40  However, the neighbors' reliance on *Bubolz* does not add to their arguments that we reject elsewhere in this opinion. As we have explained, we do not clearly discern from the terms of the garage covenant a specific purpose to set the maximum number of garages, as opposed to only setting car-capacity standards for an initial, required attached garage. Nor do we see how the neighbors' interpretation of a limit on the maximum number of attached garages would more obviously promote the general purpose to protect lot values than would a rule that exclusively requires that there be at least one attached garage with a specified car capacity.

15

¶41    The facts of ***Bubolz*** are readily distinguishable.  There, the covenant at issue had a clear nexus to the "general plan" of the covenants as a whole to preserve the subdivision exclusively for residential use, and no amount of commercial use was consistent with this purpose.  *See **id.*** at 292-93.  Thus, it was not necessary for the covenant in ***Bubolz*** to expressly state a rule prohibiting commercial use of residential dwellings.  *See **Solowicz***, 323 Wis. 2d 556, ¶36 (citing ***Bubolz***, 159 Wis. 2d at 294) (prohibition of specific activity should be enforced where purpose to do so is ascertainable from text, even where prohibition of specific activity is not express).

*D.  "Driveways" Covenant*

¶42    The neighbors argue that interpreting the covenants as a whole, with particular attention to one other covenant, supports its argument regarding the garage covenant.  Specifically, the neighbors argue that covenant § 4.04, entitled "Driveways," supports their interpretation of the attached garage covenant.  Section 4.04 requires that "[e]ach residence shall have a concrete driveway the width of the garage and extending at least twenty feet from the garage to which it connects."  The neighbors contend that the lack of "at least" in § 4.04 (in what would be the phrase "at least a concrete driveway") and the use of the singular "garage," demonstrate that the covenants contemplate each dwelling having a single attached garage with a single driveway.

¶43    It is true that the use of the definite article "the" in conjunction with "garage" in § 4.04 provides some support for the idea that the covenants contemplate that each lot would have only one attached garage.  *See **State v. Arberry***, 2018 WI 7, ¶19, 379 Wis. 2d 254, 905 N.W.2d 832 (noting that using "the" before a singular noun denotes "only one unique, specified" iteration of that

noun). On the other hand, we note that the phrase "to which it connects" could imply the existence of other attached garages to which "a" driveway on the lot does not connect, with "the garage" simply being a reference to the required initial attached garage to which the driveway connects. The neighbors fail to persuade us that § 4.04 renders the garage covenant an expression "in clear, unambiguous, and peremptory terms" of a limitation on the number of attached garages or that § 4.04 is itself such an expression.[7]

*E. Instructions On Remand*

¶44 Turning to next steps in this case, the Zeals in their initial brief on appeal request that judgment be entered in their favor declaring the following:

- The garage covenant "does not limit dwellings located in [the subdivision] to having one attached garage";

- "An attached garage is not an 'outbuilding' as that term is defined in § 5.01" of the covenants;

- The covenants as a whole "do not prohibit the Zeals from constructing a second attached garage on their dwelling"; and

- The Zeals "are authorized to construct a second attached garage as the [subdivision] Architectural Control Committee found no basis under [covenant § 7.01] to deny the Zeals' request."

¶45 We now recap pertinent points noted above. The neighbors concede that covenant § 5.01, which governs outbuildings, does not preclude the construction of a second attached garage. The neighbors also concede that the

---

[7] In response to arguments by the Zeals involving other covenants, beyond those that we have referred to up to this point, the neighbors pose counterarguments. However, we do not discern in these counterarguments a contention that any of these other covenants, individually or collectively, affirmatively support the neighbors' interpretation of the attached garage covenant.

Committee has found no basis under its review responsibilities, as set forth in covenant § 7.01, to deny the Zeals' proposal to build the second attached garage (*i.e.*, the specifications are adequate and proper). Further, the neighbors do not identify any other covenant besides the garage covenant as a potential basis to prohibit the Zeals from building the proposed second attached garage.

¶46     With those points in mind, and given our conclusion that the garage covenant does not prohibit the second attached garage in clear, unambiguous, and peremptory terms, the neighbors have provided no additional reason to deny the Zeals' requested relief. Accordingly, we direct the circuit court to enter judgment in the Zeals' favor consistent with their requests.

## CONCLUSION

¶47     For these reasons, we reverse the circuit court's order granting the neighbors' motion for summary judgment and denying the Zeals' motion for summary judgment, and remand to the circuit court with directions that the court grant summary and declaratory judgment to the Zeals consistent with our discussion above.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.