SHIRLEY S. ABRAHAMSON, J. (concurring).
*770 ¶ 30 The lead opinion[1] reaches the right conclusion for the wrong reasons. The decision of the court of appeals should be affirmed, but not because "commercial activity" is an ambiguous term that is construed in favor of the free and unencumbered use of the property.
¶ 31 Instead, the decision of the court of appeals should be affirmed because the Neuschwanders did not violate the unambiguous language of the deed restriction.
¶ 32 Because the lead opinion incorrectly concludes that the term "commercial activity" is ambiguous, it fails to address many of the parties' substantive arguments regarding the application of the restrictive covenant to the activity in question, namely, the short-term renting of the Neuschwanders' property.
¶ 33 Accordingly, I write separately to set forth the correct legal analysis that should have been relied upon by the lead opinion in deciding the instant case.
I
¶ 34 The lead opinion erroneously concludes that the term "commercial activity" is ambiguous. It is not.
¶ 35 A restrictive covenant is ambiguous if its language is reasonably susceptible to more than one interpretation. Zinda v. Krause, 191 Wis. 2d 154, 165-66, 528 N.W.2d 55 (Ct. App. 1995). "[I]f the intent of a restrictive covenant can be clearly ascertained from the covenant itself, the *650 restrictions will be enforced." Zinda, 191 Wis. 2d at 166, 528 N.W.2d 55. "Intent" does not mean "the subjective intent of the drafter," but rather, it refers to "the scope and purpose of the covenant as *771 manifest by the language used." Zinda, 191 Wis. 2d at 166, 528 N.W.2d 55. " '[W]here the language used is clear and unambiguous[,] it will be given its obvious meaning.' " Bubolz v. Dane Cty., 159 Wis. 2d 284, 294, 464 N.W.2d 67 (Ct. App. 1990) (quoted source omitted). Importantly, language is not rendered ambiguous simply because it may be difficult to apply to the facts of a particular case. Stuart v. Weisflog's Showroom Gallery, Inc., 2008 WI 86, ¶ 20, 311 Wis. 2d 492, 753 N.W.2d 448.
¶ 36 The restrictive covenant in the instant case reads as follows: "There shall be no commercial activity allowed on any of said lots."
¶ 37 The term "commercial activity" is reasonably susceptible to only one interpretation, namely, the interpretation attributed to it by both the circuit court and court of appeals. The term "commercial activity" refers to an activity undertaken with the intent to profit. See Forshee v. Neuschwander, 2017 WI App 43, ¶ 6, 377 Wis. 2d 162, 900 N.W.2d 100 (stating that the circuit court defined "commercial" as "viewed with regard to profit"); Forshee, 377 Wis. 2d 162, ¶ 11, 900 N.W.2d 100 (using a dictionary to define "commercial activity" to mean "activity of buying and selling, or activity by which [the Neuschwanders] make or intend to make a profit"); see also Black's Law Dictionary 41 (10th ed. 2014) (defining "commercial activity" as "[a]n activity, such as operating a business, conducted to make a profit").
¶ 38 The term "commercial activity," although breathtaking in scope,[2] does not appear to be reasonably susceptible to more than one interpretation. Notably, *772 the lead opinion does not posit a second reasonable interpretation. Instead, the lead opinion confuses ambiguous language with unambiguous language that is difficult to apply to the facts of the instant case.[3] *773 *651 ¶ 39 Because the language of the restrictive covenant is reasonably susceptible to only one meaning, I now apply that unambiguous language to the facts of the instant case.
II
A
¶ 40 First, it must be determined whether the Neuschwanders' short-term rentals qualify as "commercial activity." The short-term rentals constitute "commercial activity" if the Neuschwanders engaged in the short-term rentals for the purpose of making a profit.
¶ 41 The conclusion that the short-term rentals qualify as "commercial activity" is unavoidable. As the court of appeals observed, "it is undisputed that the Neuschwanders make money, and intend to make money, and by inference a profit, by renting their property to others on a short-term basis."
¶ 42 Second, in order for the "commercial activity" to be prohibited by the restrictive covenant, it must be determined that the "commercial activity" is taking place "on" the property.[4]
¶ 43 In the instant case, there is no "commercial activity" taking place on the Neuschwanders' property. The Neuschwanders are correct that, as a factual matter, the only activity that occurs on the property is residential, not commercial, in nature.
*774 ¶ 44 The Neighbors' reliance on the federal district court decision Gibbs v. Williams is misplaced.[5] The court in Gibbs was tasked with interpreting language that is materially different than the language at issue in the instant case.
¶ 45 In Gibbs, the court interpreted a restrictive covenant that stated that the subject property "shall not at any time be used for the purpose of any ... business of any description...." Gibbs v. Williams, No. 14-cv-420-jdp, 2015 WL 5440628, at *1 (W.D. Wis. Sept. 14, 2015) (emphasis added).
¶ 46 If the property at issue in the instant case were subject to the language of the restrictive covenant discussed in Gibbs, the Neuschwanders' short-term rentals would likely violate the restrictive covenant. The Neuschwanders' property is being used for commercial activity in that the temporary use and enjoyment of the property is the "thing" being bought and sold.
¶ 47 However, the restrictive covenant in the instant case is interested in the nature of the specific activities that occur on the property. In the instant case, the Neuschwanders' activity involves the property, but it is not conducted on the property. To conclude otherwise would be to impermissibly rewrite the language of the restrictive covenant.[6]
B
¶ 48 The Neighbors cannot rewrite the unambiguous language of the restrictive covenant so that it *775 focuses on the use of the property as opposed to focusing on the *652 nature of the activities that occur on the property.
¶ 49 However, to the extent the restrictive covenant directs the court to focus on the use of the property, Wisconsin courts focus on how the property is used by the occupants rather than how the property is used by the owners.
¶ 50 The court of appeals' decisions in State ex rel. Harding v. Door County Board of Adjustment [7] and Heef Realty & Investments, LLP v. City of Cedarburg Board of Appeals [8] are instructive, even though they involve zoning ordinances rather than restrictive covenants.
¶ 51 In Harding, a property owner sought a building permit that would allow him to build a time-share property owned by 13 families, each of which would have rights to occupy the property for four weeks per year. Harding, 125 Wis. 2d at 270, 371 N.W.2d 403. The Board claimed that this proposed use would violate a zoning code ordinance that restricts the use of the property to single-family dwellings. Harding, 125 Wis. 2d at 270, 371 N.W.2d 403.
¶ 52 The court of appeals held that the ordinance did not unambiguously prohibit the property's use as a time-share. In so holding, the court focused on how the time-share would be used by its occupants (i.e., residential use) rather than how the property was being used by the owners (i.e., commercial use):
*776 The building's purpose is to provide living quarters for a family. The proposed building's floor plan has a kitchen, dining room, and living room in addition to four bedrooms. The building would be occupied exclusively by one family. Although a different family would occupy the building each week, that one family would occupy the building to the exclusion of the other twelve families.
Harding, 125 Wis. 2d at 271, 371 N.W.2d 403.
¶ 53 In Heef Realty, the owners of two homes initiated a lawsuit when the Board told them that they could not use their homes for short-term rentals. Heef Realty, 361 Wis. 2d 185, ¶ 2, 861 N.W.2d 797. The Board claimed that because the homes were located in a "single-family residential zone" that permits only "single-family dwellings," short-term rentals were not allowed. Heef Realty, 361 Wis. 2d 185, ¶ 5, 861 N.W.2d 797.
¶ 54 The court of appeals held that the zoning ordinance did not prohibit short-term rentals of the homes at issue. In so holding, the court of appeals relied heavily on Harding, noting that "the cases are essentially the same." Heef Realty, 361 Wis. 2d 185, ¶ 10, 861 N.W.2d 797. Like in Harding, the court of appeals focused on how the property would be used by its occupants rather than focusing on the commercial nature of the owners' short-term rentals:
The properties here are designed for use by one family, just like the property in Harding. The Ordinance here permits single-family dwellings in a single-family residential zone, just like in Harding. And, just like in Harding, only one family will use each home at a time.
Heef Realty, 361 Wis. 2d 185, ¶ 10, 861 N.W.2d 797.[9]
*777 *653 ¶ 55 The court of appeals in both Harding and Heef Realty could not have reached the same conclusions if it had focused on how the property was being used by its owners instead of how the property was being used by its occupants. The property owners in both cases were using the properties for commercial purposes (i.e., renting for profit), not residential purposes. Nonetheless, because the occupants were using the properties for residential purposes, the court of appeals in Harding and Heef Realty both concluded that the ordinances at issue were not violated by the property owners' commercial use of the property for short-term rentals.
¶ 56 The court of appeals decision in Bubolz v. Dane County is also instructive, even though it does not involve short-term rentals.[10]
¶ 57 In Bubolz, the property-owning defendants were operating an electrical contracting business out of their home. Bubolz, 159 Wis. 2d at 291, 464 N.W.2d 67. The property on which their home was located was subject to a deed restriction that specified that "[n]ot more than one (1) single family residence shall be constructed on said premises at a cost of not less than $20,000.00." Bubolz, 159 Wis. 2d at 290, 464 N.W.2d 67. The property-owning defendants argued that the restrictive covenant pertained to and limited only what could be constructed on the property. Bubolz, 159 Wis. 2d at 293, 464 N.W.2d 67. They contended that the *778 restrictive covenant did not pertain to or limit their use of the property for a commercial purpose. Bubolz, 159 Wis. 2d at 293, 464 N.W.2d 67.
¶ 58 The court of appeals rejected the property-owning defendants' argument. First, the court of appeals held that the restrictive covenant at issue extended to the use of the property. Bubolz, 159 Wis. 2d at 294, 464 N.W.2d 67. Then, as it did in Harding, the court of appeals focused on how the property was being used by the occupants. In Bubolz, the occupants happened to also be the property owners who were conducting the electrical contracting business out of their home. Thus, in Bubolz, the occupants/owners were using the property for both residential and commercial purposes. Bubolz, 159 Wis. 2d at 294, 464 N.W.2d 67. This is in contrast to the occupants of the properties in Harding and Heef Realty, who used the properties at issue for residential purposes only.
¶ 59 Accordingly, to the extent the restrictive covenant directs the court to focus on the use of the property rather than on the nature of the activities occurring on the property, Wisconsin courts focus on how the property is used by the occupants, not how the property is used by the owners.
III
¶ 60 In sum, because the lead opinion errs at the outset by concluding that the term "commercial activity" is ambiguous, it embarks down the wrong analytical path, leaving many questions unanswered.
¶ 61 I concur with the mandate of the court, but I write separately to set forth the correct legal analysis that the court would have otherwise had to engage in but *654 for its mistaken conclusion that the term "commercial activity" is ambiguous.

See, e.g., Fruchter v. Zoning Bd. of Appeals of Town of Hurley, 133 A.D.3d 1174, 1175, 20 N.Y.S.3d 701 (N.Y. App. Div. 2015) ("The Town Code does not appear to have been updated to consider the ramifications from the emergence of the so-called 'sharing economy,' which includes the type of house sharing or short-term rentals recently made popular by various platforms on the Internet....").

See 2017 Wis. Act 59, §§ 985L, 985r (creating Wis. Stat. § 66.0615(1)(bs) and (5) ); Wis. Stat. § 66.0615(5) (requiring "lodging marketplaces" to register with the department of revenue, and to collect sales and use tax, as well as room tax, if applicable); see also Wis. Stat. § 66.0615(1)(bs) (defining "lodging marketplace" as "an entity that provides a platform through which an unaffiliated 3rd party offers to rent a short-term rental to an occupant and collects the consideration for the rental from the occupant."); see also Vanessa Katz, Regulating the Sharing Economy, 30 Berkeley Tech. L.J. 1067 (2015).

As an example, the Pennsylvania Supreme Court recently accepted review of Slice of Life, LLC v. Hamilton Twp. Zoning Bd., 164 A.3d 633 (Pa. Commw. Ct. 2017), review granted 180 A.3d 367 (Pa. 2018). There, the question to be addressed is set forth as: "Whether the Commonwealth Court disregarded the binding precedent of this Court, set forth in the case Albert v. Zoning Hearing Bd. of North Abington Twp., 578 Pa. 439, 854 A.2d 401 (2004), by finding that the purely transient use of a property as part of a commercial short-term vacation rental business was a permitted use in a residential zoning district?"

State ex rel. Harding v. Door Cty. Bd. of Adjustment, 125 Wis. 2d 269, 371 N.W.2d 403 (Ct. App. 1985).

Heef Realty & Invs., LLP v. City of Cedarburg Bd. of Appeals, 2015 WI App 23, 361 Wis. 2d 185, 861 N.W.2d 797.

The court of appeals also noted "that the home [in Harding ] was designed with a kitchen, dining room, living room, and four bedrooms. This focus on the daily living connotation of 'residential' gibes [sic] with the circuit court's explanation that what makes a home a residence is its use 'to sleep, eat, shower, relax, things of that nature.' " Heef Realty & Invs., LLP v. City of Cedarburg Bd. of Appeals, 2015 WI App 23, ¶ 12, 361 Wis. 2d 185, 861 N.W.2d 797.

Bubolz v. Dane Cty., 159 Wis. 2d 284, 464 N.W.2d 67 (Ct. App. 1990).